CATHERINE M. COTTER, Individually and as Administratrix of the Estate of WALTER FRANCIS COTTER, Also Known as WALTER F. COTTER, Deceased, Respondent, v MERCEDES-BENZ MANHATTAN, DIVISION OF DAIMLER-BENZ OF NORTH AMERICA, INC., et al., Defendants-Appellants.

First Department, April 30, 1985

**APPEARANCES OF COUNSEL**

*William P. Ford* of counsel (*Richard B. Marrin* and *Cushing O. Condon* with him on the brief; *Ford Marrin Esposito & Witmeyer,* attorneys), tor defendants-appellants.

*Sally Weinraub* of counsel (*Bert W. Subin, P. C.,* and *Weinraub & Haines,* attorneys), for respondent.

**OPINION OF THE COURT**

Ross, J.

The instant action involves personal injuries sustained in an accident, which was allegedly caused by a malfunctioning cruise control system on a 1976 Mercedes-Benz (Mercedes) automobile, model number 300 D.

Walter Francis Cotter (Mr. Cotter), purchased the subject Mercedes from a dealer located in New York City.

In 1976 Mr. Cotter was living in Wappingers Falls, New York. At that time, he had been married for more than 22 years and was the father of four children, whose ages ranged from 11 to 21.

Since 1956 Mr. Cotter had been employed by the American District Telegraph Company (ADTC). This company sells and services security alarm systems. By 1976, Mr. Cotter had been promoted to the position of district coordinator for the nine branch offices, which comprised the metropolitan New York-New Jersey area.

At approximately 6:45 A.M., on April 27, 1976, while Mr. Cotter was driving the subject Mercedes from his home to work, southbound along the Taconic State Parkway (Taconic), the

accident occurred, when the car went off the roadway and on to a grassy shoulder, where it hit a rock and overturned. Mr. Cotter was found lying outside of the demolished vehicle.

Subsequent to the accident, Mr. Cotter was transported to the Westchester County Medical Center (Hospital), where he remained for almost six weeks. During Mr. Cotter's hospital stay, *inter alia:* (1) he was in the intensive care unit for almost three weeks; (2) he received treatment for 17 fractures, including three fractures of the right leg (femur, tibia and fibula), both hips, ribs, right clavicle, sternum and back; (3) he underwent a tracheotomy, a laporatomy and oral surgery; (4) he was placed on a respirator for about three weeks; and (5) he developed a postoperative fat embolism syndrome in the brain and a pulmonary embolism in the lungs. Upon discharge from the Hospital on June 7, 1976, *inter alia,* (1) he was on nonweight bearing crutches; (2) he was wearing a body brace; and (3) his right leg was one inch shorter than his left. In February 1977 Mr. Cotter returned to his job. However, some two years later, in May 1979, he was allegedly compelled to stop working, due to the pain he was suffering as a residual effect of his injuries. According to his doctors, he was totally disabled, from effectively performing the duties of his position, which required long periods of driving and sitting at a desk.

After the accident, the Mercedes had been towed away, and Mr. Cotter allegedly never saw it again, in view of the fact that the carrier, State Farm Insurance (State Farm), which insured him for property damage, had in July 1976 paid him for it and took title to the disabled car.

More than 2½ years after the accident, in December 1978, Mr. Cotter commenced the instant action against the defendants by the service of a summons, which was followed in January 1979 by the service of a complaint.

The three defendants are Mercedes-Benz Manhattan, Division of Daimler-Benz of North America, Inc. (Mercedes-Benz); Mercedes-Benz of North America (Mercedes-Benz N.A.); and, Daimler-Benz Akteingesellschaft (Daimler-Benz). Mercedes-Benz is a New York corporation, and is the dealer who sold the subject Mercedes to Mr. Cotter. Mercedes-Benz N.A. is a New Jersey corporation, which allegedly imported the Mercedes, and, Daimler-Benz is a corporation, organized under the laws of the Federal Republic of Germany, whose place of business is situated in Stuttgart Untertuekheim, Germany, and it allegedly manufactured, assembled and fabricated all the parts of the Mercedes sold to Mr. Cotter.

The legal theories underlying the complaint are strict products liability, negligence and breach of warranty, in that allegedly the subject Mercedes contained a defective cruise control system, which had caused Mr. Cotter's accident, when it failed to operate properly. The complaint seeks compensatory, loss of consortium and punitive damages.

Following the joinder of issue, discovery was undertaken by the parties. The defendants deposed Mr. Cotter, and, in that deposition, he gave the plaintiffs' explanation of how the accident occurred.

In substance, Mr. Cotter testified that on the morning of the day of the accident he left home to go to the ADTC office in Clifton, New Jersey; that he was driving the Mercedes, which was equipped with a cruise control system; that the cruise control permits the driver to set the speed of the car and then take his foot off the accelerator; that, allegedly, even though he had had this vehicle for several months, this was the first time that he was using the cruise control; that, about 15 minutes before the accident, he engaged the cruise control and set the vehicle's speed at between 48 to 50 miles per hour; that he was traveling at this time in the middle lane of a three-lane highway; that in the vicinity of Route 100, on a downgrade, this highway channeled into two lanes; that he was then at the beginning of the two-lane section; that now, as the car was moving at approximately 50 miles per hour, he hit the brake to disengage the cruise control system so that the car would slow down; that the cruise control system would not disengage and the vehicle continued to travel at the same rate of speed; that thereafter he stepped on the brake a second time and this time he held the brakes down, but the cruise control still did not disengage, and the car still did not slow down; that at that point he was in the two-lane highway; that, as the roadway turned to the right, the Mercedes struck the center steel divider on his left; that, after hitting the divider, the car crossed over to the right lane, where it went off the highway into the grass, ran into a boulder, flipped over and came to rest on the driver's side of the vehicle. As mentioned *supra,* Mr. Cotter was found outside the vehicle.

Prior to trial, Mr. Cotter died from causes unrelated to the accident. Subsequently, by stipulation between the parties, dated October 17, 1983, the names of the plaintiffs were changed to Mrs. Cotter as administratrix of the estate of her deceased husband and Mrs. Cotter, individually.

The instant case was tried in July 1984.

At trial, the plaintiffs' proof, in support of their contention that a defective cruise control system allegedly caused Mr. Cotter's accident, in substance, consisted of: (1) the deposition testimony of the late Mr. Cotter, which was discussed *supra;* (2) the testimony of the plaintiffs' expert, Robert Brenner, who was a certified mechanical, safety and traffic engineer, to the effect that, even though he did not examine the subject vehicle, a defect in the cruise control could have caused an accident to occur in the manner described by Mr. Cotter; and (3) evidence, both in the form of documents and testimony, that in February 1984 the defendants instituted, in the United States, a program to recall Mercedes, with certain model numbers, for the express purpose of replacing the cruise control system in them. This evidence indicated that the recall campaign was prompted by the discovery that the cruise control system then in some of those cars could malfunction. Among the model numbers listed in the recall letter was the model number of the subject car. We find no evidence in this record that Mr. Cotter ever received notice of this recall, prior to the accident.

In substance, the defense contended that Mr. Cotter fabricated his testimony about a malfunctioning cruise control causing the accident.

At trial the defendant introduced evidence that it was allegedly physically impossible for the accident to have happened as Mr. Cotter described it, in view of the immense distance between the point where the three-lane portion of the Taconic turned into two lanes and the place where Mr. Cotter's car allegedly struck the center divider. Defendants' witness, Bruce Gramling, who was a parkway traffic engineer for the Taconic, testified that this distance was at least 1,299 feet. In order to visually portray the distance involved, the defendants offered in evidence a video tape drive-through. Furthermore, the defendants' witnesses, Wolfgang Siegel, who is an engineer employed by the defendant manufacturer Daimler-Benz and Herbert H. Richardson, who is associate dean of the School of Engineering of the Massachusetts Institute of Technology, both testified to the effect that the brakes on the model number of the subject Mercedes were so powerful that they would stop the car, if it was going 50 miles per hour, within 200 feet, even if the cruise control system malfunctioned.

Also, the defendants offered testimony that the cruise control system on the subject Mercedes allegedly was not likely to be defective, since that vehicle had a cruise control cable with a blue clip, and, according to defendants' witness Gerard Drucker,

who is employed as an engineer in the Research Department of the defendant manufacturer Daimler-Benz, only Mercedes which had cruise control cables with a black clip had the potential defect.

The jury returned a verdict in favor of the plaintiffs. They awarded $4,500,000 to Mrs. Cotter, as administratrix of the estate of Mr. Cotter; and awarded Mrs. Cotter $500,000 for her derivative cause of action.

■ Even though Trial Term possesses broad latitude in its supervision of trial proceedings, our examination of the record in the instant case leads us to conclude that Trial Term abused its discretion, so as to deny the defendants a fair trial. Therefore, we reverse and direct a new trial.

Sufficient errors were committed by Trial Term in its evidentiary rulings, so that we find those errors resulted in depriving the defense of an opportunity to present essential evidence to the jury to support their contention that Mr. Cotter had concocted an untrue story as to how the accident occurred.

■ First, Trial Term improperly prevented a defense witness, one Richard Tucker (Tucker), who was employed as a salesman by Estate Motors, from testifying to alleged admissions made to him by Mr. Cotter. These alleged admissions were made by Mr. Cotter when he was ordering another Mercedes, immediately after his discharge from the Hospital. In pertinent part, Mr. Cotter allegedly told Tucker: (1) that the instant accident happened because Mr. Cotter fell asleep at the wheel; and (2) that Mr. Cotter wanted this new Mercedes to be equipped with cruise control, in view of the fact that he had frequently used the cruise control in his prior Mercedes and that he had liked it. As mentioned *supra,* Mr. Cotter in his deposition had contended that the morning of the accident was the first time that he had used the cruise control. Trial Term sustained plaintiffs' objection, to Tucker testifying about these admissions, upon the grounds of CPLR 4519 (the so-called Dead Man's Statute) and because allegedly the defendants had not identified Tucker to the plaintiffs before trial as a possible witness. We find that Trial Term erred in excluding this highly relevant testimony. Since Tucker was a salesman for a dealership independent of the defendants, we find that Tucker was not "a person interested in the event" (CPLR 4519), so as to bar his testimony (*Matter of Manchester,* 279 App Div 254). Also we find, from our examination of the record of the pretrial proceedings, that, before trial, the parties were only under an obligation to exchange the names of eyewitnesses, and, in view of the fact that Tucker did not

witness the accident, he did not fit into that classification. In any event, the defendants supplied Tucker's name to the plaintiffs one year before trial, and, therefore, objectively speaking, Tucker's appearance at trial could not have been a complete surprise.

■ Furthermore, Trial Term erred in excluding certain nurses' notes that appear in the records of the Hospital, which deal with Mr. Cotter's physical and mental state at the time of the accident. In pertinent part, these notes contain: (a) alleged admissions by Mr. Cotter that he was drug dependent at the time of the accident, and (b) references to symptoms of Mr. Cotter undergoing drug withdrawal while in the Hospital. Obviously, such an admission of drug dependency could support defendants' claim that Mr. Cotter himself, caused the accident, when he fell asleep at the wheel, and would be relevant and should have been admitted. If Trial Term had permitted the subject nurses' notes to be marked into evidence, the defendants' witness Dr. Wilfred Yoslow, who is a physician, was, in substance, prepared to testify that in his medical opinion the symptoms of drug withdrawal were evidence that Mr. Cotter was under the influence of drugs at the time of the accident. We find that "the court committed serious error when it refused to receive in evidence the notes of nurses contained in the hospital records and made in the regular course of business * * * In view of the court's ruling, the jury did not have the benefit of this evidence which was clearly admissible" (*Spoar v Fudjack*, 24 AD2d 731).

■ Moreover, Trial Term erred in ruling against the admission into evidence of two conversations between Mr. Cotter and James Michael Quinn (Quinn), who in 1976 was a field claim representative of State Farm, Mr. Cotter's insurer. On or about June 2, 1976, Mr. Cotter, while still a patient in the Hospital, telephoned Quinn and allegedly told him that the steering mechanism on the subject vehicle had been faulty, and Mr. Cotter asked that State Farm check the steering mechanism before they destroy the car. Thereafter, within a week, a representative of State Farm went to the salvage yard and found "no steering defect". Subsequently, on December 2, 1976, Mr. Cotter again telephoned Quinn, and that conversation was electronically recorded with Mr. Cotter's express consent. In this December conversation, Mr. Cotter, in pertinent part, (1) told Quinn that in the last week of November 1976 Mr. Cotter had received a letter from the United States Department of Transportation, that advised him of the defendants' recall program concerning the cruise control system contained in the Mercedes 1976 model

number 300 D; (2) advised Quinn that Mr. Cotter knew how to check the subject cruise control for defects; and (3) requested that State Farm check the cruise control in issue of the subject car. Our review of the record indicates that on December 21, 1976, approximately three weeks after this conversation, State Farm once again inspected the vehicle, and they found that the cruise control system was missing from the vehicle. Since Mr. Cotter in his deposition testimony had indicated that he knew of no inspections being made of the car after the accident, we find that this evidence relating to Mr. Cotter's two requests that State Farm inspect this vehicle were relevant to the issues of whether Mr. Cotter's version of the accident was credible and were further admissible as admissions and inconsistent statements. We find that the records Quinn made of these conversations are admissible, in view of the fact: (1) they were made in the regular course of business (CPLR 4518); and (2) Mr. Cotter identified himself in both conversations (*Kelly v Wasserman*, 5 NY2d 425, 429-430). Further, if defendants' counsel were permitted to lay a foundation, Mr. Cotter's identity would have been shown circumstantially, since it is obvious that the speaker exhibited a knowledge of the facts that only Mr. Cotter would be likely to have known (7 Wigmore, Evidence § 2155 [3d ed]).

It is the general rule that "Errors in the admission or exclusion of evidence will be considered harmless if the reviewing court is satisfied that the result would have been the same even if the evidence had not been improperly admitted or excluded" (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 2002.02). Although each one of these errors by itself may have been harmless (CPLR 2002), and may not have affected the jury's findings, we find that collectively, they prejudiced substantially the right of the defendants to a fair trial.

Based on the circumstances of the instant case, where the cruise control system is missing and where Mr. Cotter is unavailable for cross-examination, the errors of Trial Term discussed *supra,* were especially egregious.

Accordingly, the judgment, Supreme Court, New York County (Eugene Wolin, J., with a jury), entered August 22, 1984 in favor of the plaintiffs, should be reversed, on the law, the facts and in the exercise of discretion, the judgment vacated and the matter remanded for a new trial, with costs to abide the event.

SULLIVAN, J. P., ASCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on August 22, 1984, unanimously reversed, on the law, the facts and in the exercise of discretion, the judgment vacated, and the matter remanded for a new trial, with costs to abide the event.