■ BERTRAM D. COHN, Appellant-Respondent, v JORDAN MEYERS, Respondent-Appellant.—In an action to recover damages for assault and battery, the plaintiff appeals from a memorandum decision of the Supreme Court, Kings County (Golden, J.), dated August 21, 1984, which denied his motion to set aside a jury verdict, and from a judgment of the same court, entered September 7, 1984, which is in favor of the defendant and against him in the sum of $18,130, upon a jury verdict, and the defendant cross-appeals from so much of the same decision as denied the plaintiff's motion to set aside the verdict upon the condition that the defendant stipulate to a reduction of damages, and from so much of the same judgment as awarded the defendant only $18,130.

Ordered that the appeal and cross appeal from the memorandum decision dated August 21, 1984 are dismissed, as no appeal lies from a decision (see, Ojeda v Metropolitan Playhouse, 120 AD2d 717; Matter of Shawn C. A., 110 AD2d 697, lv denied 65 NY2d 605; Schicchi v Green Constr. Corp., 100 AD2d 509); and it is further,

Ordered that the cross appeal from the judgment entered September 7, 1984 is dismissed as abandoned; and it is further,

Ordered that the judgment is reversed, on the law, and a new trial is granted; and it is further,

Ordered that any award of costs is to abide the event of the new trial.

In this action, the plaintiff sought to recover damages for assault and battery, and the defendant's answer contained counterclaims seeking to recover damages for assault and battery, false arrest and malicious prosecution. The action arose from an altercation which occurred on May 2, 1978, in Maimonides Hospital in Kings County, where both the plaintiff and the defendant served as physicians in the pediatrics department. At the time of the incident, the plaintiff was married to the defendant's former wife and was living with her and the defendant's two daughters in the defendant's former marital residence.

In his opening statement to the jury, the defense counsel stated that, as a result of the altercation on May 2, 1978, the defendant was wrongfully arrested and held in jail for three days. However, at a subsequent Bench conference, out of the presence of the jury, the defense counsel acknowledged that the criminal proceeding brought against his client had not been instituted by the plaintiff and was not related to the alleged assault. Rather, the defendant had been charged with burglary, criminal mischief and assault on the complaint of his former wife, who alleged that on May 1, 1978, the day preceding the subject incident, the defendant had unlawfully entered her home and had threatened her daughters and herself. The defendant, therefore, voluntarily discontinued his counterclaim to recover damages for false arrest and malicious prosecution. Thereafter, the counsel for the plaintiff moved for a mistrial, contending that his client had been irreparably prejudiced by his adversary's opening remarks and that curative instructions would not provide an adequate remedy. The court denied the motion, finding that a mistrial was inappropriate and unnecessary under the circumstances, because the jury had heard only the respective opening statements of counsel, and had not heard any evidence in support of the defendant's false arrest and malicious prosecution claims. The court then instructed the jury that, as the result of a legal determination, the defendant's counterclaim to recover damages for false arrest and malicious prosecution was being removed from its consideration, and that the portion of the opening statement addressed thereto was to be disregarded.

Thereafter, during the trial, the plaintiff testified that on May 2, 1978, he encountered the defendant on the second floor of the hospital and told him, "the police are looking for you". However, the court sustained an objection by the defense counsel and thereby precluded the plaintiff from providing an

explanation for his remark. The plaintiff testified that shortly thereafter, while he was walking toward the elevator, the defendant shoved him from behind and made a threatening remark. The defendant told the plaintiff that he wanted to speak to him, and the plaintiff reluctantly agreed to do so. The plaintiff led the defendant down to the main floor, through the lobby and into a booth in the hospital's admitting office where they had a conversation regarding the defendant's relationship with his daughters. During this discussion, the defendant suddenly became agitated and, as the plaintiff attempted to leave, the defendant assaulted him. The plaintiff testified that he never struck the defendant.

The defendant's testimony regarding the altercation differed materially from that of the plaintiff. According to the defendant, he was making his rounds on the morning of May 2, 1978, when he encountered the plaintiff. In the presence of several other doctors, the plaintiff told him, in a loud voice, "The police have a warrant for your arrest and are out looking for you". Upset by the plaintiff's statement, the defendant asked to speak with him, and the plaintiff led him down to a cubicle in the admitting office. There, the defendant told the plaintiff that his statement was unprofessional and stupid but, notwithstanding their personal feelings toward each other, it was important that they not permit such feelings to interfere with their professional functions. The defendant then began to talk about his poor relationship with his daughters, to which the plaintiff responded, "I don't give a shit about your kids". The plaintiff started to leave and, as the defendant attempted to follow, the plaintiff pushed him back into his chair, causing a pair of glasses in the pocket of the defendant's jacket to break. The defendant pushed back, and each man began to punch and kick the other.

At the conclusion of the trial, the jury found that the defendant had acted in self-defense, but that the plaintiff had not, and it awarded the defendant $80,000 in compensatory damages and $60,000 in punitive damages on his counterclaim. The plaintiff thereafter moved to set aside the verdict. In a memorandum decision, dated August 21, 1984, the court determined that the verdict was not contrary to the weight of the evidence, but that the jury's award of damages was excessive, and it ordered a new trial with respect to damages unless the defendant stipulated to a reduction of the award of compensatory damages to $7,500 and of an award of punitive damages of $10,000. The defendant so stipulated, and a judgment was entered accordingly.

On this appeal, the plaintiff asserts that the cumulative effect of certain erroneous rulings by the trial court deprived him of a fair trial. In particular, the plaintiff assigns error to the court's denial of his mistrial motion and to the court's exclusion of evidence concerning the events on the day prior to the altercation between the plaintiff and the defendant. We agree with these contentions and, therefore, reverse and order a new trial.

A motion for a mistrial is directed to the sound discretion of the trial court *(Harris v Village of E. Hills,* 41 NY2d 446, 451), but the denial of a mistrial motion may, given the facts of a particular case, constitute reversible error *(Murphy v City of New York,* 273 App Div 492) where it appears that the motion should have been granted "to prevent a substantial possibility of injustice" *(Halstead v Sanky,* 48 Misc 2d 586, 588). In this case, the defense counsel's remarks in his opening statement to the effect that the plaintiff was responsible for the wrongful arrest and incarceration of the defendant created a substantial possibility of injustice. First, it is conceded that these remarks were inaccurate, inasmuch as the defendant's arrest and imprisonment were precipitated by an incident separate and distinct from his altercation with the plaintiff, in which the defendant's former wife (the plaintiff's present wife) was the complainant. Second, although it is argued on appeal that the error was excusable because the defense counsel did not obtain the records of the criminal prosecution until after his opening statement, it is clear that counsel should have known prior to the commencement of trial that the defendant's counterclaim for false arrest and malicious prosecution had absolutely no evidentiary basis, and his remarks to the jury must therefore be viewed, at best, as having been made with utter disregard for the truth. Third, although curative instructions may, in a particular case, be sufficient to justify the denial of a mistrial motion *(see, Harris v Village of E. Hills, supra,* at p 451), we do not believe that the instructions delivered in this case adequately served to eliminate the prejudice engendered by the defense counsel's remarks *see, Bagailuk v Weiss,* 110 AD2d 284, 287). The jury was instructed that the opening statements of counsel do not constitute evidence, and, after the defense counsels' opening statement and the subsequent discontinuance of the counterclaim to recover damages for false arrest and malicious prosecution, the trial court simply instructed the jury that, as a result of the court's own legal determination, that counterclaim, and defense counsel's remarks with respect thereto,

were no longer to be considered. This latter instruction was inaccurate and misleading, because it implied that the court had taken the counterclaim from the jury's consideration upon some technical point of law when, in fact, that counterclaim was withdrawn by the defense upon a concession that it was unfounded and should never have been interposed in the first instance.

We are also persuaded that, under the facts of this case, the plaintiff should have been permitted to offer some evidence for the purpose of explaining his statement to the defendant that the police were looking for him. It is settled law that the "[d]etermination of relevancy and the conduct of a trial so as to avoid undue emphasis upon matters not really in issue * * * are matters resting largely in the discretion of the trial court" (Radosh v Shipstad, 20 NY2d 504, 508, rearg denied 20 NY2d 969). The court, in the exercise of its discretion, should determine whether the relevancy of particular evidence is outweighed by the likelihood that its introduction would confuse or mislead the jury (see, Radosh v Shipstad, supra, at p 508; see also, Richardson, Evidence § 147, at 117 [Prince 10th ed]). In this case, the parties' altercation was undoubtedly related to their prior relationship resulting from the defendant's divorce and the plaintiff's relationship to the defendant's former wife. However, the trial court attempted to exclude, insofar as possible, all evidence of the prior relationship, so that the jury would not be unduly burdened with irrelevant and inflammatory claims of adultery, alienation of affections and the like. Although we cannot say that the court's exercise of its discretion was entirely improvident, the refusal to permit the plaintiff to provide any explanation for his statement deprived the jury of evidence which was relevant to the material issue in the case, i.e., responsibility for starting the fight. Thus, the jury should have been permitted to hear that an incident had occurred on May 1, 1978 between the defendant and his former wife, which resulted in the issuance of a warrant for the defendant's arrest. In the absence of such evidence, the jury had absolutely no basis for assessing the context and purpose of the plaintiff's statement to the defendant that the police were looking for him, which statement appears to have been the catalyst for their altercation. The exclusion of such evidence was prejudicial to the plaintiff, inasmuch as the jury could only infer that the plaintiff had no justification for uttering the statement, and that he did so simply to embarrass, humiliate, annoy or antagonize the defendant, or to instigate a further confronta-

tion with him. This prejudice was enhanced by reason of the inaccurate remarks of the defense counsel in his opening statement regarding the plaintiff's responsibility for the defendant's wrongful arrest and detention. Moreover, because this was a case in which both sides were seeking punitive damages, evidence concerning all of the circumstances immediately connected with the incident tending to explain the motivation for the parties' conduct should have been admitted *(see, Voltz v Blackmar,* 64 NY 440; *Moran v International Playtex,* 103 AD2d 375, 376).

This being a close case, in which the jury's assessment of the credibility of the respective parties was crucial, we cannot say that the result would have been the same had the foregoing errors not occurred *(see, Cotter v Mercedes-Benz Manhattan,* 108 AD2d 173, 180). Their cumulative effect was clearly prejudicial to the plaintiff and deprived him of a fair trial *(see, Cotter v Mercedes-Benz Manhattan, supra,* at p 180). Accordingly, a new trial is granted and we need not pass upon the remaining contentions advanced by the plaintiff. Mollen, P. J., Lazer and Bracken, JJ., concur.

Brown, J., concurs in part and dissents in part and votes to modify the judgment, on the law, by deleting the provision thereof awarding the defendant punitive damages, and, as so modified, to affirm the judgment, with the following memorandum, with which Lawrence, J., concurs. On this appeal, the plaintiff asserts that two erroneous rulings by the trial court served to deprive him of a fair trial. The first concerns the denial of his motion for a mistrial following an erroneous statement by the defense counsel regarding his client's counterclaim to recover damages for false arrest and malicious prosecution. The second concerns the court's refusal to permit the plaintiff to explain the background facts relating to his comment to the defendant that the police were looking for him.

I cannot agree with the majority that the trial court abused its discretion either in denying the plaintiff's motion for a mistrial or in precluding him from testifying regarding events which occurred on the day prior to the assaults.

With regard to the first of these two issues, it is well established that a motion for a mistrial is directed to the sound discretion of the trial court and ordinarily should not be granted except to prevent a substantial possibility of injustice *(Harris v Village of E. Hills,* 41 NY2d 446). While that discretion is not absolute, and facts may exist in a particular case which might render the refusal to declare a mistrial

reversible error *(see, Murphy v City of New York,* 273 App Div 492), the trial court does, nonetheless, have broad discretion in this area. At bar, the defense counsel's comments in his opening statement regarding the plaintiff's responsibility for the defendant's arrest and prosecution were concededly untrue and should, with due diligence, have been discovered to have been untrue by counsel prior to trial. I cannot conclude, however, that any prejudice which might have been suffered by the plaintiff as a result of those comments was so substantial that it could only have been cured by declaration of a mistrial. First, the comments occurred at an early juncture in the case, prior to the introduction of any evidence, and it was, therefore, unlikely that they would have had much persuasive effect on the jury's deliberations. In addition, the court had specifically instructed the jury in both its initial and final instructions that the comments of counsel in their opening statements did not constitute evidence. Finally, upon denying counsels request for a mistrial, the court, after consulting with and apparently obtaining the approval of both counsel, issued a curative instruction to the effect that the false arrest and malicious prosecution claims were being removed from the case, and that the jury was to disregard that portion of the opening which concerned those claims.

As to the second issue, it is my view that the exclusion of evidence relating to the parties' conduct on the day preceding the day of the incident represented a proper exercise of the trial court's discretionary power to determine the relevancy of evidence and to exclude evidence where its relevancy is outweighed by the likelihood that it would unnecessarily inflame, confuse, or mislead the jury *(see, Radosh v Shipstad,* 20 NY2d 504, 508). Moreover, while I would agree with the majority that such evidence might have had some relevance to the issue of punitive damages, this record (even including the excluded evidence) does not support an award of punitive damages to either party *(see, Guion v Associated Dry Goods Corp.,* 43 NY2d 876). Thus, any error in this regard was harmless.

Since I do not find any basis in the record to support a finding that the plaintiff's conduct rose to the level of maliciousness or recklessness necessary to sustain an award of punitive damages *(see, Guion v Associated Dry Goods Corp., supra),* I would strike the award of punitive damages from the judgment. I do not find, however, the award of compensatory damages in the amount of $7,500 to be so excessive as to warrant disturbing it on appeal *(see Beardsley v Wyoming*

*County Community Hosp.,* 79 AD2d 1110; *Welty v Brown,* 57 AD2d 1000, *appeal dismissed* 42 NY2d 995).

Finally, the defendant's contention that the court's charge was inadequate because it did not marshal the evidence was not preserved for review as no timely exception to the charge was made *(see, Fichera v Blumberg,* 97 AD2d 809). In any event, a review of the record reveals that the charge adequately stated the parties' factual contentions and the principles of law applicable thereto.