Angieri v Musso (2024 NY Slip Op 00887)

Angieri v Musso

2024 NY Slip Op 00887

Decided on February 21, 2024

Appellate Division, Second Department

Warhit, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 21, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
BARRY E. WARHIT
LAURENCE L. LOVE, JJ.

2020-03568
 (Index No. 702055/17)

[*1]Barbara Angieri, etc., appellant,
v
Maria Musso, etc., et al., respondents.

APPEAL by the plaintiff, in an action to recover damages for medical malpractice, etc., from a judgment of the Supreme Court (Joseph J. Esposito, J.), entered April 14, 2020, in Queens County. The judgment, (1) upon a jury verdict in favor of the defendants on the issue of liability, (2) upon the denial of the application of the plaintiff and Giovanni Angieri, in effect, pursuant to CPLR 4402 for a new trial, and (3) upon the denial of the application of the plaintiff and Giovanni Angieri, in effect, pursuant to CPLR 4404(a) to set aside the jury verdict as contrary to the weight of the evidence and for a new trial, is in favor of the defendants and against the plaintiff and Giovanni Angieri, in effect, dismissing the complaint.

Sullivan Papain Block McManus Coffinas & Cannavo P.C., New York, NY (Stephen C. Glasser and Christopher J. DelliCarpini of counsel), for appellant.
Keller, O'Reilly & Watson, P.C., Woodbury, NY (Patrick J. Engle of counsel), for respondent Maria Musso.
Heidell, Pittoni, Murphy & Bach LLP, New York, NY (Daniel S. Ratner of counsel), for respondent Northwell Health-North Shore University Hospital.

WARHIT, J.

OPINION & ORDER
The principal question presented on this appeal is whether the defendants improperly attempted at trial to shift liability to certain physician-defendants who had been awarded summary judgment prior to trial. We answer this question in the negative, and find that the Supreme Court providently exercised its discretion in denying the application of the plaintiff and Giovanni Angieri, in effect, for a new trial on this ground. We further conclude that the verdict was not contrary to the weight of the evidence.
I. Factual and Procedural Background
On July 27, 2015, Giovanni Angieri (hereinafter Giovanni) underwent a hernia surgery performed by Angelo John Procaccino, with the assistance of an anesthesiologist, Shimon Frankel, at the defendant Northwell Health-North Shore University Hospital (hereinafter the hospital). Subsequently, Giovanni, and his wife, Barbara Angieri (hereinafter together the Angieris), suing derivatively, commenced this action against the hospital, Procaccino, Frankel, and Maria Musso, Giovanni's primary care physician, inter alia, to recover damages for medical malpractice in connection with an alleged postoperative respiratory arrest suffered by Giovanni at the hospital on July 28, 2015. Prior to trial, the Supreme Court granted the separate motions of Procaccino and Frankel for summary judgment dismissing the complaint insofar as asserted against each of them (see Angieri v Procaccino, M.D., 2019 WL 4239373 [Sup Ct, Queens County, July 31, 2019, No. 702055/2017]), and the action proceeded to trial against Musso and the hospital.
At trial, the Angieris' theory of liability with respect to Musso was that she [*2]improperly failed to list certain medications Giovanni was taking for a respiratory condition on a presurgical clearance form that was forwarded to the hospital, which led to him suffering a postoperative respiratory arrest. More specifically, the Angieris' counsel argued to the jury in his opening statement that, as a result of Musso's failure to list Giovanni's respiratory medications on the presurgical clearance form, hospital personnel responsible for his postoperative care "did not know that [he] needed these medications to breathe, to prevent respiratory arrest and ultimately coma." The Angieris' theory against the hospital was that its staff failed to adequately respond to complaints by members of Giovanni's family that he was having difficulty breathing the day after the surgery, which also caused him to suffer respiratory arrest.
The Angieris presented, among other evidence, testimony from Musso acknowledging that she should have, but did not, list Giovanni's respiratory medications on the presurgical report she prepared clearing him for surgery. Musso also testified that the doctors at the hospital were nevertheless aware that Giovanni was taking those medications, which were documented in a medication list contained in the hospital chart, and that the doctors at the hospital would be responsible for giving him medications following the surgery. The Angieris also called an expert witness who testified that Musso's failure to include the respiratory medications on the presurgical clearance form was a substantial factor in the hospital's failure to administer those medications and in causing Giovanni's respiratory arrest. With respect to the hospital, the Angieris' expert opined that the failure of the nurse on duty and the hospital to respond to complaints by Giovanni's wife and his niece that he was having difficulty breathing and needed his medication was likewise a substantial factor in causing his respiratory arrest.
Musso presented evidence indicating that both Procaccino and Frankel were aware of Giovanni's respiratory condition and his respiratory medications, as they were documented in Frankel's pre-anesthesia evaluation notes and Procaccino's office records. Musso also presented evidence that Giovanni was not in respiratory distress at any time during his hospitalization and that he did not suffer an acute respiratory arrest, but instead, suffered a transient arrhythmia that was unrelated to the failure to take his medications.
The hospital called an expert witness who similarly opined that Giovanni suffered "a sudden rhythm disturbance of his heart" on July 28 due to, among other factors, his obesity and long-term hypertension. The hospital's expert testified that Giovanni's "heart failed," after which he had respiratory distress, which was unrelated to the absence of his medications on July 27 and July 28. The hospital's expert opined that the nursing staff and other medical providers at the hospital appropriately responded to Giovanni, and that he did not suffer any respiratory distress at any point on July 28 before the arrhythmia.
Application, in Effect, for a New Trial
During the trial, the Angieris' counsel made an application, in effect, pursuant to CPLR 4402 for a new trial on the ground that Musso and the hospital improperly attempted to shift liability to Procaccino and Frankel, who had been awarded summary judgment dismissing the complaint insofar as asserted against each of them prior to trial. The Angieris' counsel argued that summary judgment was the functional equivalent of a trial, and that the "remaining defendants [were] not entitled to the benefit of CPLR Article 16 limited liability, particularly when those [summary judgment] motions were unopposed by the defendants."
Counsel for Musso and counsel for the hospital opposed the Angieris' application, contending that no testimony had been elicited criticizing or attempting to blame Procaccino or Frankel for any alleged departures, and that Musso and the hospital were entitled to bring to the jury's attention medical records and facts involving those practitioners.
The Supreme Court denied the Angieris' application. The Angieris' counsel made subsequent renewed applications for the same relief. Those applications were denied as well.
The Verdict
At the conclusion of the trial, the jury returned a verdict finding that, although Musso "depart[ed] from good and accepted medical practice in providing the hospital with a medical clearance form which did not include [Giovanni's] respiratory medication on July 20, 2015," that departure was not a substantial factor in causing his injuries. With respect to the hospital, the jury found that it did not depart from good and accepted medical practice "by failing to respond to the family's complaints of [Giovanni's] difficulty breathing on July 28, 2015, prior to his arrest."
The Supreme Court subsequently denied the Angieris' application, in effect, pursuant to CPLR 4404(a) to set aside the verdict as contrary to the weight of the evidence and for a new trial, [*3]and a judgment was entered in favor of Musso and the hospital and against the Angieris, in effect, dismissing the complaint. The Angieris appeal. During the pendency of the appeal, Giovanni died, and Barbara Angieri, as the administrator of his estate, was substituted for him.
II. Legal Analysis
A. Denial of the Application, in Effect, Pursuant to CPLR 4402 for a New Trial
On appeal, the plaintiff contends that a new trial is warranted because the Supreme Court improperly permitted Musso and the hospital to shift blame for Giovanni's injuries to Procaccino and Frankel, both of whom had been awarded summary judgment and dismissed from the action prior to trial.
Pursuant to CPLR 4402, "[a]t any time during the trial, the court, on motion of any party, may order . . . a new trial in the interest of justice on such terms as may be just." "The decision to grant or deny a mistrial in the interest of justice pursuant to CPLR 4402 'is within the sound discretion of the court, and is to be made on a case-by-case basis'" (Johnson-Hendy v Mosu, 201 AD3d 896, 898, quoting Frankson v Philip Morris Inc., 31 AD3d 372, 373; see McNamara v Hittner, 2 AD3d 417, 418). However, the denial of such a motion "may, given the facts of a particular case, constitute reversible error where it appears that the motion should have been granted to prevent a substantial possibility of injustice" (Cohn v Meyers, 125 AD2d 524, 527 [citation and internal quotation marks omitted]; see Johnson-Hendy v Mosu, 201 AD3d at 898; Frankson v Philip Morris Inc., 31 AD3d at 373; cf. CPLR 4404[a]; Duman v Scharf, 186 AD3d 672, 674).
Here, the Supreme Court providently exercised its discretion in denying the Angieris' application, in effect, pursuant to CPLR 4402 for a new trial. For the reasons that follow, we find that the court did not err by allowing evidence that Giovanni's surgeon and anesthesiologist were aware of Giovanni's respiratory condition and medications, particularly in light of the theory of liability advanced by the Angieris against Musso at trial.
Under CPLR article 16, subject to certain exceptions (see id. § 1602), "a joint tortfeasor can . . . limit its liability for non-economic losses to its proportional share upon proof that it is 50% or less culpable for a personal injury" (Morales v County of Nassau, 94 NY2d 218, 223; see Rangolan v County of Nassau, 96 NY2d 42, 46; Hendrickson v Philbor Motors, Inc., 102 AD3d 251, 254). However, as this Court held in Hendrickson, "since summary judgment is the 'functional equivalent' of a trial, it follows that the limited liability benefits for defendants under CPLR article 16 are forfeited as to any codefendant who has been awarded summary judgment in its favor" (Hendrickson v Philbor Motors, Inc., 102 AD3d at 255, quoting Drooker v South Nassau Communities Hosp., 175 Misc 2d 181, 183 [Sup Ct, Nassau County]; see Johnson v Peloro, 62 AD3d 955, 957).
The plaintiff here contends that, although neither Musso nor the hospital invoked CPLR article 16 at trial, the harm from blaming defendants who have been awarded summary judgment is equivalent to having asked the jury to allocate fault to them without their names being on the verdict sheet.
This Court, in Raineri v Lalani (191 AD3d 814), addressed a situation where the defendants presented evidence at trial that negligence by a codefendant, who had been awarded summary judgment, may have been a substantial factor in causing the subject injuries. In Raineri, the plaintiffs commenced an action, inter alia, to recover damages for medical malpractice against, among others, Barry Huppert and Buddhadev N. Manvar, cardiologists who treated the decedent prior to his suffering a cardiac arrest (see id. at 815). Following a trial, the jury found that Huppert did not depart from the accepted standard of care by not discussing with the decedent the findings of an echocardiogram performed on a particular date and not recommending surgery (see id.). With respect to Manvar, the jury found that he departed from the accepted standard of care during the relevant period by failing to refer the decedent on an urgent basis to a cardiac surgeon for mitral valve surgery, but that such departure was not a substantial factor in causing the decedent's injury (see id. at 815-816).
On appeal, this Court held, in pertinent part, that the Supreme Court erred in permitting the jury to hear evidence that CVS Pharmacy, Inc. (hereinafter CVS), mistakenly gave the decedent a double dose of digoxin, and testimony from Manvar that the double dose of digoxin predisposed the decedent to an arrhythmia that caused his cardiac arrest (see id. at 816). CVS, which also had been a defendant in the action, had been awarded summary judgment based on its argument that its error in giving the decedent a double dose of digoxin was not a substantial factor in causing the decedent's cardiac arrest (see id.). Noting the rule that "summary judgment is the 'functional [*4]equivalent' of a trial," this Court, citing Hendrickson, held that the Supreme Court "should have precluded Huppert and Manvar from presenting evidence at trial that CVS's negligence may have been a substantial factor in causing the decedent's cardiac arrest" (id.). This Court found that while the error was harmless as to the jury's verdict with respect to Huppert, the error was prejudicial to the plaintiffs with respect to the jury's finding that Manvar's departure was not a substantial factor in causing the decedent's injury, thus warranting a new trial on that issue (see id. at 816-817).
In the present case, however, in contrast to Raineri, Musso and the hospital did not present evidence at trial that negligence by the dismissed defendants, Procaccino and Frankel, may have been a substantial factor in causing Giovanni's injuries. In fact, Musso and the hospital did not argue that the other doctors were responsible for Giovanni's injuries at all. Rather, both Musso and the hospital presented evidence that Giovanni initially suffered a transient arrhythmia, not a respiratory arrest, and thus, the omission of the respiratory medications in Musso's presurgical clearance report was not a cause of any injuries suffered by Giovanni. Further, the Supreme Court properly admitted evidence showing that, contrary to the Angieris' representation, the doctors responsible for Giovanni's medical care at the hospital were, in fact, aware of his respiratory condition and medications.
Importantly, the opening statement given by the Angieris' counsel was grounded on a theory of liability against Musso that was both misleading and factually inaccurate. The Angieris' counsel told the jury that Musso's failure to list Giovanni's respiratory medications on the presurgical clearance form resulted in both the surgeon and the anesthesiologist not knowing that Giovanni needed those medications. This statement, however, was belied by the evidence. Both Giovanni's respiratory condition and medications were documented in Procaccino's office records and Frankel's pre-anesthesia evaluation notes. This fact was confirmed by the deposition testimonies of Procaccino and Frankel, the relevant excerpts of which were read to the jury. Indeed, Frankel also testified at his deposition that the anesthesia team gave Giovanni one of his respiratory medications before he was extubated. Moreover, the Angieris' own expert acknowledged that both Procaccino and Frankel were aware of Giovanni's respiratory condition and his medications.
Under these circumstances, Musso was properly permitted to present the challenged evidence showing, among other things, that both Procaccino and Frankel knew of Giovanni's respiratory condition and associated medications prior to surgery. Unlike Ranieri, there was no attempt by Musso or the hospital to directly impute liability to the dismissed defendants, and Musso was appropriately permitted to show that her failure to list those medications on the presurgical clearance form was not a factor in the medical decisions made at the hospital. Accordingly, based on our review of the record, substantial justice was accomplished, and the Supreme Court providently exercised its discretion in denying the Angieris' application, in effect, pursuant to CPLR 4402 for a new trial (see generally Frankson v Philip Morris Inc., 31 AD3d at 373).
B. Weight of the Evidence
Contrary to the plaintiff's further contention, the jury's verdict was not contrary to the weight of the evidence.
A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746; Schuster v Sourour, 207 AD3d 491, 493). "When a verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (Sela v Katz, 165 AD3d 1191, 1192; see TJG Realty of Rockland, LLC v Con Serv Constr., Inc., 218 AD3d 713, 715). "It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses" (Scalogna v Osipov, 117 AD3d 934, 935; see TJG Realty of Rockland, LLC v Con Serv Constr., Inc., 218 AD3d at 715).
"A jury's finding that there was negligence, but that such negligence was not a proximate cause of the injury is inconsistent and, therefore, contrary to the weight of the evidence only when the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (Sela v Katz, 165 AD3d at 1193 [internal quotation marks omitted]; see Kontomichalos v County of Nassau, 69 AD3d 811). "Thus, where there is a reasonable view of the evidence under which it is not logically impossible to reconcile a finding of negligence but no proximate cause, it will be presumed that, in returning such a verdict, the jury adopted that view" (Mata v Huntington Union Free School Dist., 57 AD3d 738, 739).
Here, the jury's verdict with respect to Musso was based upon a fair interpretation [*5]of the evidence, and was not contrary to the weight of the evidence. Based on the evidence presented at trial, the jury could have reasonably concluded that Musso's failure to list Giovanni's respiratory medications on the presurgical clearance form was not a substantial factor in causing his injuries because the doctors responsible for Giovanni's care at the hospital were aware of those medications and, in any event, Giovanni did not suffer a respiratory arrest related to the failure to take those medications. With respect to the latter issue, Musso's expert testified that, according to the hospital record, Giovanni's oxygen saturation level was normal on July 28, and he was ambulating during that day. The expert concluded that there was "no evidence in the chart that [Giovanni] actually was in respiratory distress at any time during his hospitalization," and that he did not suffer acute respiratory arrest. Additionally, counsel for Musso and counsel for the hospital read into evidence a portion of Procaccino's deposition testimony in which he testified that the decedent suffered a "transient arrhythmia that wasn't captured on the EKG." The hospital's expert witness similarly opined that Giovanni suffered "a sudden rhythm disturbance of his heart" due to, among other factors, his obesity and long-term hypertension.
Thus, since the finding that Musso was negligent in failing to list the medications can be reconciled with the finding that such negligence was not a substantial factor in causing Giovanni's injuries, the jury is presumed to have adopted that view of the evidence (see Sela v Katz, 165 AD3d at 1193).
Further, the jury's finding that the hospital was not negligent was based on a fair interpretation of the evidence and, thus, the verdict in favor of the hospital was not contrary to the weight of the evidence. As noted, the hospital's expert opined that the nursing staff and other medical providers at the hospital appropriately responded to Giovanni, and that he did not suffer any respiratory distress at any point on July 28 before the arrhythmia.
The plaintiff's remaining contention is without merit.
Accordingly, the judgment is affirmed.
DILLON, J.P., MILLER and LOVE, JJ., concur.
ORDERED that the judgment is affirmed, with one bill of costs.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court