■ HERMAN REYNOLDS et al., Respondents, v CITY OF NEW YORK, Appellant, and WINSTON LESTER, Respondent, et al., Defendant. WINSTON LESTER, Respondent, v WILLIAM LADSON, Defendant, and CITY OF NEW YORK, Appellant. [679 NYS2d 372] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered November 20, 1996, which denied the City's motion for a new trial on the issue of liability, granted the cross-motion of plaintiff Herman Reynolds to set aside the jury's verdict as to past and future pain and suffering and directed a new trial on that issue, reversed, on the law, without costs, the City's motion granted, the grant of the cross-motion vacated as academic in view of the foregoing, and the matter remanded for a new trial on all issues.

In these consolidated personal injury actions arising from the head-on collision of a car and a van on the rain-slicked lower roadway of the Manhattan Bridge, which was undergoing Federally-funded renovation of its upper roadway, it was error for the trial court to admit into evidence certain documentary and testimonial evidence pertaining to such Federally-funded safety enhancement of the bridge, specifically the 1981 "Manhattan Bridge Rehabilitation Project Report" prepared for the State by the consulting firm of Edwards and Kelsey.

23 USC § 409 provides: "Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled

or collected for the purpose of identifying evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."

It is undisputed that the Manhattan Bridge rehabilitation project has been and continues to be the recipient of Federal highway funding pursuant to 23 USC §§ 103 and/or 130, 135, 151, 152, 153, 156 and 219. The City moved, at the beginning of the trial, to exclude the introduction, of, *inter alia*, "the complete accident history of this roadway, the individual accident reports referred to in such history, any study or survey conducted prior to or for purposes of any portion of the ongoing rehabilitation process, including the study performed by Edwards and Kelsey, Inc. in 1983", as well as any testimony derived from this sort of documentation.

In denying the City's motion, the trial court relied upon the unpublished opinion of the Court of Claims in *Kratchman v State of New York* (July 29, 1991, Israel Margolis, J., *affd for reason stated in Court of Claims* 206 AD2d 893, *lv denied* 84 NY2d 809), which held that a claimant (here a plaintiff) in a highway negligence claim may defeat the State's (here the City's) objection to evidence under section 409 by showing that the information was generally compiled for purposes other than those strictly relating to an application for Federal aid funding pursuant to section 152 or for "developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds" (quoting *Martinolich v Southern Pac. Transp. Co.*, 532 So 2d 435, 437 [La], *cert denied sub nom. Louisiana Dept. of Transp. & Dev. v Nick Martinolich, Inc.*, 490 US 1109).

The court further found that the City had not come forward with the requisite evidentiary showing of a "real and substantial nexus between the data to be excluded and the potential development of a federally funded safety enhancement". However, as noted above, it is undisputed that the Manhattan Bridge rehabilitation project has been and continues to be the recipient of Federal highway funding pursuant to 23 USC §§ 103 and/or 130, 135, 151, 152, 153, 156 and 219.

While *Kratchman* enunciates valid general principles, the reports excluded there were State Department of Transportation, Traffic and Safety Division highway safety investigation reports, resulting from routine investigations undertaken in the ordinary course of the Department of Transportation's business of investigating accident scenes. Here, the three-volume Edwards and Kelsey study was specifically prepared to develop a highway safety construction project to be implemented through the use of Federal funds. There also can be no doubt that, although it was being performed in phases over a period of more than 20 years, the maintenance and reconstruction of the Manhattan Bridge's several roadways constitutes a single, unified project. Although the agreement for the bridge reconstruction does not elaborate as to which of the enumerated Federal statutes was specifically pertinent to the project, that does not render section 409 inapplicable. Under all the circumstances presented, the City has sufficiently demonstrated that, at the very least, the Edwards and Kelsey report has a "substantial nexus" to the Federally-funded rehabilitation of the Manhattan Bridge.

Inasmuch as we are remanding this case for a new trial, we need not reach the City's other contentions. Concur—Wallach, J. P., Tom and Andrias, JJ.

Rubin, J., dissents in a memorandum as follows: On May 20, 1987, plaintiffs Herman Reynolds, Robert Perkins and Winston Lester sustained injury when the van in which they were riding driven by plaintiff Lester, was struck head-on by an automobile owned and operated by defendant William Ladson. From the descriptions of the accident, it appears that the Ladson vehicle hit standing water and skidded (possibly as the result of hydroplaning) on the concrete-filled steel grating that comprises the surface of the Manhattan Bridge. Winston Lester stated that Ladson's vehicle appeared to hit something and "the water smashed up in the air all over his car and then he skid over into my lane and then he hit on the railing", causing him to "come up into my vehicle." Defendant Ladson testified that he was traveling in the left of two westbound traffic lanes, heading towards Manhattan. Traffic in the third lane of the undivided roadway was headed eastbound, towards Brooklyn. Mr. Ladson stated, "The whole surface of the road was wet." The incident began when "I got to about the middle of the bridge and my car started to swerve towards the left into oncoming traffic * * * I tried to steer my car back into the right lane * * * It didn't respond. It continued to skid."

Of the three plaintiffs injured as a result of the collision,

plaintiff Herman Reynolds, who was riding with Robert Perkins in the back of the van, sustained the most severe injury. He is paralyzed from the waist down and retains only limited use of his hands. The case was tried before a jury, which returned a verdict against the City of New York in favor of the plaintiffs. Plaintiff Perkins received $275,000 and plaintiff Lester received $760,000, later reduced by stipulation between the parties. Herman Reynolds was awarded $6,981,000, of which $250,000 and $750,000, respectively, represent awards for past and future pain and suffering. Supreme Court denied the City's post-trial motion to set aside the verdict (CPLR 4404 [a]) and granted plaintiff Reynolds' motion for a new trial as to the amount of his past and future pain and suffering.

The issue dividing this Court on appeal is the admissibility of a three-volume engineering study concerning the condition of the Manhattan Bridge prepared by the engineering firm of Edwards & Kelsey, consultants to the City of New York on the Manhattan Bridge reconstruction project. There is no question that the report was conducted in connection with a Federally-funded construction project; both the report and the agreement between the City and the New York State Department of Transportation bear the same project identification number (P.I.N. 0850.87). There is, however, disagreement about whether the use of the particular study at trial is barred pursuant to 23 USC § 409.

The statute bars the use of any study conducted for purposes of a Federally-funded safety enhancement project in any action seeking damages arising out of any occurrence at such location, but only under certain specified conditions: (1) where the project is undertaken pursuant to 23 USC §§ 130, 144 and 152 or (2) where the project "may be implemented utilizing Federal-aid highway funds". Contrary to the majority's characterization of the issue, the source of the funding for the Manhattan Bridge rehabilitation project is hotly contested by the parties. Specifically, as pointed out in the brief of plaintiff Robert Perkins, defendant City has failed to establish either that the project was undertaken pursuant to one of the enumerated sections or that it is being carried out with funding provided to roadways comprising the Federal-aid highway system, as defined in 23 USC § 103. The director of the Mayor's Traffic Construction Coordination Council testified at trial that he had no idea as to the source of funding for the project. Even at this late juncture, the City is less than candid about the nature of the funding. Having abandoned the position, advanced before Supreme Court, that the bridge constitutes "an urban principal

arterial highway" under 23 USC § 103 (b), the City does not even attempt to demonstrate that the rehabilitation work on the Manhattan Bridge falls within the ambit of any specific provision of the statute. Instead, the City relies exclusively on the theory that "Congress extended the protections of section 409 to the development of 'any highway safety construction improvement project which may be implemented using Federal-aid highway funds'" (quoting 23 USC § 409), which the City construes to mean any highway project that receives any Federal funding whatsoever.

The all-inclusive scope that the City accords to the statute is not sustainable. If the quoted statutory language is construed to bar the introduction of every study conducted in connection with any project that is partially funded—or that has the potential to be funded—with Federal moneys, the provisions dealing with particular projects undertaken pursuant to 23 USC §§ 130, 144 and 152 would be rendered mere surplusage, an interpretation that offends basic rules of statutory construction (*see, Sanders v Winship,* 57 NY2d 391, 396; McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]). Had Congress intended to exclude any study conducted in connection with any Federally-funded road construction or reconstruction project, it would have simply stated as much, without including elaborately detailed provisions dealing with particular types of projects in the legislation.

Given the pervasiveness of Federal support for highway projects, adoption of the City's expansive interpretation would operate to exclude from consideration an overwhelming number of engineering reports, not just those created in conjunction with particular projects falling within the contemplation of the statute. The obligation falls on the party objecting to the introduction of competent and material evidence to state the ground for its objection. In the absence of any demonstrated statutory basis for exclusion of the engineering report, defendant may not assign error to Supreme Court for admitting it into evidence (CPLR 4017, 5501 [a] [3]).

However, even if this Court accepts the City's proposition that consideration of the engineering study by the jury is barred by statute, it does not invariably follow that a new trial is required. The record contains ample evidence of the hazards to drivers crossing the Manhattan Bridge and the City's knowledge of those hazards, from which a jury could reasonably conclude that the defective condition of the road surface was the proximate cause of plaintiffs' injuries. Plaintiff introduced the "Annual Condition Report, Bridges and Tunnels" for the

four years preceding the accident, all of which document the problem with " 'concrete filled grating' decks", mainly the "reduction of surface traction when the steel grating is wet." Read into the record is the deposition testimony of Richard Retting, who was employed by the City over a 10-year period "in various capacities, most of the time dealing with highway safety and traffic engineering issues." His study of accident data "indicated that vehicles had been crossing over the center line on the lower roadway of the bridge * * * and colliding with an opposing vehicle." The deposition testimony of Gerard F. Reninger, for 15 years the City's Director of Arterial Highway and Bridge Coordination, also read into the record, reflects his appreciation of the hazard represented by the exposed steel grating as the result of poor traction. He noted that, at some point, steel studs had been welded to the exposed steel grating but had become worn over time. In driving across the bridge, he testified that he "felt it behooved me to allow plenty of leeway for possibilities that I wouldn't have control over."

Mr. Reninger further testified to being present at meetings with Department of Transportation officials. During one such meeting, the potential for head-on collisions was raised and, at another, a proposal was advanced to resurface the entire length of the lower roadway to improve its skid resistance. Memoranda of these meetings, kept by the City in the ordinary course of business, are also contained in the record (CPLR 4518 [a]; Richardson, Evidence § 298 [Prince 10th ed]; Fisch, New York Evidence § 833 [2d ed]). Thus, in the context of the entire record, introduction of the engineering report, even if it is barred by statute, constitutes harmless error (*see, Fishman v Scheuer*, 39 NY2d 502), and the outcome would have been no different had the evidence been excluded (*Cotter v Mercedes-Benz Manhattan*, 108 AD2d 173, 180).

Accordingly, I would affirm the judgment of Supreme Court.