*802 OPINION OF THE COURT
Andrew P. O’Rourke, J.
Claimant alleges that she was injured in an automobile accident on State Route 94 in the Town of Blooming Grove on August 11, 1992 when her vehicle was caused to skid and hydroplane into the path of another vehicle, and that such was the result of the defendant’s negligence in the maintenance of the highway. The allegations of negligence center around the condition of the pavement, the adequacy of the traffic signs, the speed limit and the highway’s drainage.
Claimant had requested an order compelling disclosure and, at oral argument on March 30, 1999 and at a conference held on May 3, 1999, all of the issues raised by claimant’s application have been resolved except for the applicability of 23 USC § 409 to certain of claimant’s requests. That statute provides as follows: “Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.” (Emphasis added.) Sections 130 and 144 relate to railway-highway crossings and bridge replacements, respectively, and are not relevant to this claim. Section 152 relates to highway safety improvements generally, and requires, as a condition of receiving Federal highway aid, that States “conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections, and elements * * * assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement.” (23 USC § 152 [a] [1].)
The disclosure demands at issue, as set forth in paragraphs “9” through “12” of claimant’s notice for discovery and inspection dated December 28, 1998, request:
*803 • legends keys and/or explanatory notations for the PIL[1] printout;
• reports and/or documents reflecting safety evaluations which were performed by Department of Transportation (DOT) personnel responsible for reviewing the PIL printouts for the accident location for the period 1987 through August 11, 1992;
• documents reflecting accident studies or analysis for the accident location, including, but not limited to, investigation summaries and/or PIL investigation reports for the accident location for the period 1987 through August 11, 1992;
• documents reflecting the initial screening and/or evaluation of the PIL printouts which reflect or pertain to the DOT’s determinations as to which stretches of State highway to investigate within Region 8 for the period 1987 through August 11, 1992.
In support of its position that production of the subject materials is barred by Federal law, defendant submitted an affidavit from John E. Watson, the manager of accident surveillance activities in the Department of Transportation’s Safety Program Management Bureau (Bureau), the office that oversees the Highway Safety Improvement Program (HSIP) that addresses the requirements of 23 USC § 152. The activities of the Bureau involve the compilation and analysis of accident data with the goal of identifying and addressing problem locations— i.e., those locations with higher than typical accident rates — in order to evaluate the possible use of Federal highway safety funding. In connection with such analysis, the Bureau generates what is known as a “PIL list” for each region of the State which identifies those locations within the region most in need of attention. These lists constitute part of the State’s response to the Federal mandate, as reflected in 23 USC § 152 (a) (1), to “identify” hazardous locations and “assign priorities” for remediation.
In a subsequent affidavit submitted in response to claimant’s contention that the applicability of the Federal statute depends on whether Federal funds were actually utilized on a project arising out of the disputed material, Mr. Watson advised that the activities of the HSIP generally are supported by Federal *804 funds and suggested that inquiry into whether a particular project received such funding is misplaced. He attached a September 26, 1991 DOT memorandum stating that the State had obtained approval to fund the HSIP with Highway Planning and Research (HPR) funds, 85% of which were from the Federal Government and 15% from the State. The memorandum describes the HSIP activities that have been determined to be eligible for HPR funding include:
• accident data collection and analysis;
• highway safety investigations;
• safety evaluations (before/after studies);
• accident surveillance (including updating the IML);
• accident studies.
The memorandum contains instructions that when DOT employees are engaged in HSIP activities, their time sheets should reflect that fact so that appropriate Federal reimbursement can be received. A further 1991 memorandum identifies the goal of the HSIP as to “systematically identify and treat accident-prone locations and evaluate implemented safety improvements, thereby reducing the number and severity of accidents in a cost-effective manner.”[2]
The manifest congressional intent in enacting 23 USC § 409 was to “foster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions” (Perkins v Ohio Dept. of Transp., 65 Ohio App 3d 487, 500, 584 NE2d 794, 802; see also, Palacios v Louisiana & Delta R. R., 740 So 2d 95 [La]; Reichert v State, 694 So 2d 193 [La]). The statute has the dual effect of (1) facilitating candor in the evaluation of highway safety hazards, and (2) prohibiting Federally required recordkeeping from being used as a tool by civil litigants (see, Robertson v Union Pac. R. R. Co., 954 F2d 1433; Stephens v Town of Jonesboro, 642 So 2d 274 [La]). The amendment of the statute twice in this decade reflects an obvious congressional intent to strengthen the protection afforded to materials within its coverage.
*805 In response to cases such as Light v State of New York (149 Misc 2d 75), interpreting the original language of the statute precluding the admission of covered materials at trial to not bar pretrial disclosure, Congress added the prohibition against discovery that appears in the current version (Pub L 102-240, tit I, § 1035 [a], 105 US Stat 1978 [1991]). In 1995, in response to, inter alia, the decision in Weideman v Dixie Elec. Membership Corp. (627 So 2d 170 [La]), holding that the reference to information “compiled” only included a State’s analysis of data but not the data itself, Congress added the words “or collected” to clarify that the prohibition included the raw data collected by State officials as well as their analysis and conclusions (Pub L 104-59, tit III, § 323, 109 US Stat 591 [1995]; see, Reichert v State, supra, at 198).
Clearly, the result of the statute is harsh. Evidence that would otherwise be crucially relevant on a number of issues that routinely arise in highway negligence litigation may not be admitted or disclosed, notwithstanding that such may influence or perhaps determine the outcome of the litigation. Nevertheless, Congress has determined that the effect of the prohibition would be to enhance the safety of the Nation’s highways and, in the long run reduce the number of people killed and injured in accidents that could be avoided by systematic analysis, and that this goal outweighs the barriers that it creates for litigants attempting to prove that a State’s negligence contributed to their injuries. Indeed, one could perhaps make an apt analogy to other exclusionary rules, such as those that obtain in criminal cases, where evidence that would otherwise be probative is barred from admission in furtherance of what is deemed to be a higher goal. Our system of government assigns the balancing of such competing interests to the legislative branch, and the role of this court is not to second-guess the analysis that resulted in this evaluation, or to attempt, in a particular case, to find a way around it, but rather to effectuate congressional intent. The prohibition supercedes the general policy of this State, as reflected in CPLR 3101 (a), that there be “fiill disclosure of all matter material and necessary in the prosecution or defense of an action”.[3]
Claimant relies heavily on the decision of the Appellate Division, First Department, in Reynolds v City of New York (254 *806 AD2d 159) and dicta in that decision that commented favorably on a 1991 decision of Judge Israel Margolis of this court in Kratchman v State of New York (Ct Cl, July 29, 1991, claim No. 69769).[4] Claimant’s argument is that section 409 does not apply to information resulting from routine investigations undertaken in the ordinary course of the Department of Transportation’s business of investigating accident scenes, and that since the State of New York initiated an accident surveillance system in the early 1970’s, and section 409 was not enacted until 1987, the PIL lists were not compiled “pursuant to” section 152 but rather would have existed even had Congress not determined to encourage States to undertake such investigation and analysis by the enactment of section 152. While perhaps semantically appealing (although claimant’s analysis might have a greater claim to cogency had she compared the State’s institution of its accident surveillance program with the enactment of section 152 rather than section 409), this argument does not withstand analysis.
Apparently, claimant would have this court hold that because the State of New York’s realization that systematic analysis and prioritization of accident locations was a worthwhile undertaking predated the Federal Government’s decision to encourage States to so act (by conditioning Federal funding thereon), section 409, in effect, does not apply in this State, at least with respect to material “compiled or collected * * * pursuant to section! ] * * * 152”. There is no logical basis for such a strained and illogical interpretation of congressional intent, and the court declines to adopt claimant’s reasoning. Examination of the goal of the HSIP — to “systematically identify and treat accident-prone locations and evaluate implemented safety improvements” — side-by-side with the Federal Government’s mandate that States “systematically maintain an engineering survey of all public roads to identify hazardous locations * * * assign priorities for the correction of such locations * * * and establish and implement a schedule of projects for their improvement” (23 USC § 152 [a] [1]) — belies any contention that the compilation and analysis of data in connection with the HSIP is independent of the Federal requirement. Leaving *807 aside the fact the section 152 was itself enacted in the early 1970’s (1973), nothing in the language of section 409 supports the contention that it was only intended to apply in those States that were not enlightened enough to adopt such a program without the Federal carrot-and-stick, and indeed its purpose — to encourage States to fully and honestly compile and analyze accident data without fear that either its conclusions or its work product would be used against it in subsequent litigation — is equally fostered regardless of whether a particular State decided to initiate such a program before or after the Federal Government became involved.
The Reynolds Court reversed a judgment on behalf of the plaintiff therein, holding that evidence that should have been excluded pursuant to section 409 because it involved a highway improvement project that had been Federally funded had been improperly admitted at trial. Two types of material are covered by section 409, and Reynolds (supra) concerned one such type— material developed in connection with “any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds” — while what is at issue herein is material “compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title”. The two categories of material are separated by an “or,” indicating that the prohibition applies to both types, and the comments that the Reynolds Court may have made concerning the viability of an “ordinary course of business” exception to the prohibition as it relates to material compiled pursuant to section 152 had no bearing on its determination of the issue before that Court, which concerned a construction project implemented with Federal funds. Claimant’s entire presentation herein is dependent on the statement in Reynolds (supra, at 161) that “Kratchman enunciates valid general principles” and her attribution of that dicta to the discussion in Kratchman (supra) of the “ordinary course of business” exception. For the reasons stated above, this court does not recognize any such exception.
Two incidental points remain. The first is to note that while section 409 provides the State with a shield against disclosure, it also removes a potential sword from its arsenal. Section 409, in precluding the admission of data collected or compiled pur *808 suant to section 152,[5] would seem to prevent the defendant from arguing that a particular hazard was not addressed because it was lower on the list of priorities than other hazardous conditions that needed to be addressed first. While the defendant has already represented to the court that it did not intend to pursue such a line of defense in this claim, the maxim that one should be careful about what one wishes for comes to mind.
Amother potential issue, which may or may not exist in this case, is the question of State notice of a particular hazardous situation on a highway, and the potential argument that may be advanced by a claimant that since (1) the State has in place a comprehensive program to identify and evaluate highway hazards, and (2) Federal law precludes judicial inquiry into what hazards were identified (i.e., the State’s actual knowledge), then once a claimant has established that a particular location was hazardous, State notice may be presumed. But again, at this point such is mere conjecture.
For the foregoing reasons, the claimant’s application for an order directing production of the materials identified in paragraphs “9” through “12” of claimant’s notice for discovery and inspection dated December 28, 1998 is denied.

. Priority investigation location.

. An affidavit from Jeffrey Erickson, associate capital program analyst with the DOT, confirms that the HSIP, which includes preparation of the PIL lists, is currently Federally funded to the extent of 80%.

. US Constitution, article VI, clause (2) provides: “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * ** * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby” (see, Jones v Rath Packing Co., 430 US 519; Gibbons v Ogden, 9 Wheat [22 US] 1). The introductory language of section 409— *806 “¡notwithstanding any other provision of law” — makes clear the congressional intent in this regard.

. Judge Margolis’ subsequent decision on the merits was affirmed (206 AD2d 893). There is no indication that the interlocutory opinion on the evidentiary question was appealed, or that the issues addressed therein were raised before the appellate court.

. The statute applies to material sought to be introduced by either party.