OPINION OF THE COURT
Stephen J. Mignano, J.
Claimants allege that on October 15, 2000 they were injured in an automobile accident which occurred as the proximate result of negligence by the New York State Department of Transportation (hereinafter DOT) in failing to rectify a “dangerous intersection” for an unreasonable period of time.
Trial of this matter was held on April 19, 20 and 21, 2005. The trial was bifurcated and this decision deals solely with the issue of liability.
At the commencement of trial, the State raised objections to any and all material, testimony and documentary evidence concerning the DOT internal classification of the Route 302/ Route 17M intersection as a “dangerous intersection.” The basis for this objection was 23 USC § 409 which creates certain evidentiary protections for states which collect or compile data on highway safety for the purposes of obtaining funding under 23 USC § 152, the federal Hazard Elimination Program.
Section 409 provides as follows:
“Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sides, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.”
At trial, claimants sought to defeat the protections afforded the State by section 409 by virtue of the fact that the State had voluntarily disclosed the disputed material in the discovery phase of this proceeding. Claimants argued that since the State had voluntarily produced this documentation, it had waived any protections under section 409 and the material was therefore *824 admissible at trial. I reserved decision on this issue, allowing claimants to put in their full case, but granted the State a continuing objection to any and all material, documents or testimony which might later be ruled excludable or protected by section 409 (trial transcript, vol I, at 60-61).
At this point, it is appropriate for the court to rule upon the State’s original and continuing objections.
There is absolutely no doubt that the documentary evidence which the State now seeks to exclude would have been privileged in the discovery phase of this proceeding. Upon appropriate motion, this material would have been shielded by this court from disclosure to the claimant. For this analysis, I need look no further than the decision of Judge Andrew E O’Rourke of this court in Coniker v State of New York (181 Misc 2d 801 [1999]).
In Coniker (supra), Judge O’Rourke details the genesis and legislative history of sections 152 and 409 and performs a comprehensive analysis of section 409 in the context of a motion to compel in discovery. This court follows, in full, the analysis and conclusions of Judge O’Rourke as Coniker pertains to pretrial discovery proceedings.[1] Thus, it is a relatively simple matter for this court to determine that the disputed material would not have been available to claimant in the discovery phase of this proceeding.
However, the actions by the State of New York in voluntarily disclosing the disputed documentation raise additional issues not addressed in Coniker (supra), or, to my knowledge, in other decisions by the judges of this court. Specifically, the matter at bar calls into question whether the disclosure privilege created by section 409 can be waived by the State and, if it can, whether otherwise privileged information becomes admissible evidence by virtue of the waiver. For the reasons stated below, I conclude that section 409 establishes both a discovery privilege and an evidentiary bar. As a result, the defendant’s disclosure privilege can be waived by the State but such waiver does not subvert the evidentiary bar established separately in section 409.
As discussed in Pierce County v Guillen (537 US 129 [2003]), section 409 was amended in 1991 and 1995, both times with the obvious congressional intent of strengthening the protections afforded to the states in gathering and compiling information *825 regarding highway safety for purposes of federal funding under section 152. Although section 409, as amended, will certainly result in somewhat harsh results for an individual claimant, Congress has made clear that the public policy of encouraging candid study, design and construction of highway safety improvements is paramount. This is a determination correctly left to the Legislature and should not be disturbed by the courts.
The discovery privilege granted to the states was added to the original section 409 in 1991 by the addition of the phrase “shall not be subject to discovery or” (Pub L 102-240, tit I, § 1035 [a], 105 US Stat 1914). From the legislative history it appears that Congress added this discovery privilege to address concerns that the disclosure of section 409 material, even if not admitted in a subsequent litigation, would provide a road map for plaintiffs and plaintiffs’ experts in preparing for trial. By creating this disclosure privilege, Congress effectively shielded the states from being required to provide such a road map. However, nothing in section 409, or in any other legislation related thereto, prevents the State from disclosing the information on a voluntary basis. As a result, while the State may assert a privilege to protect section 409 material, it is not required to do so. In the case at bar, the State apparently determined, whether by omission or commission, to waive this disclosure privilege, thus providing the road map to claimants and claimants’ expert.
Having determined that the State can waive the discovery privilege afforded by section 409, the next question for analysis is whether such waiver transmutes section 409 material into admissible evidence at trial. I conclude that it does not.
The precise language of section 409 implicated in this issue is:
“Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected . . . shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action” (emphasis added).
The plain language of section 409 prior to the 1991 amendment established an evidentiary bar in that no material compiled for section 152 purposes could be admitted in court or considered for any other purpose. The 1991 amendment added the discovery privilege in the disjunctive when it stated that such material should not be available in discovery or admissible in court. As a result, it is clear that the addition of the discovery privilege in 1991 was intended by Congress to be supplementary *826 to, not in replacement of, the existing evidentiary bar established by section 409 as originally enacted. The obvious intention was to make the section 409 shield stronger rather than weaker. Since the defendant could not have waived the evidentiary prohibition prior to 1991, there is no reason to believe Congress intended to allow such waiver as a result of the 1991 amendment.
This rationale is also strengthened by the fact that Congress amended section 409 again in 1995. At that time, while section 409 clearly protected compilations of data prepared for section 152 purposes, it was not at all clear that the raw data from which the compilations were drawn was similarly protected. In 1995 Congress added the words “or collected,” presumably to make it absolutely clear that raw data collected by an agency for section 152 purposes was also protected (Pub L 104-59, tit III, § 323, 109 US Stat 568; see also Reichert v State, Dept. of Transp. & Dev., 694 So 2d 193 [La 1997]).
As a result of this analysis, I now conclude that section 409 establishes both a discovery privilege, which is waivable, and an evidentiary bar, which is not. Further, the evidentiary prohibition extends to both compilations (in this case, accident history, intersection and accident diagrams and the inclusion of the intersection on the PIL list) and the raw data from which the compilations were developed, at least to the extent that such raw data is held by DOT (in this case, the accident reports, MV 104 forms and intersection diagrams). Therefore, the State’s objection to all section 409 material is now sustained and all such material is stricken from the record of the matter sub judice.
In view of my determination to strike all section 409 material, I must also disregard virtually all of the opinion testimony of claimants’ expert, Nicholas Bellizzi. Mr. Bellizzi testified at length and gave various opinions as to the dangerous condition of the subject intersection and the failure of DOT to rectify the situation, the existing conditions of the intersection as the proximate cause of claimants’ accident and the negligence of DOT during the time the intersection was allowed to remain unremediated. All of these matters are well within an expert’s purview and would normally be accepted by this court. However, at trial, Mr. Bellizzi clearly indicated that all of his opinions and determinations were based solely upon the records obtained in discovery by claimants (trial transcript, vol II, at 463-464). Mr. Bellizzi obtained no records from any agency other than DOT *827 and, other than one site visit, did no independent investigation. He compiled no accident history, performed no analysis of his own and did not prepare any charts of the intersection or collision diagrams. His testimony as to the classification of the intersection is entirely based upon precluded material.
As stated, the discovery privilege afforded the defendant can be, and was, waived. In effect, the State voluntarily provided a road map for claimants to follow. Nonetheless, claimants chose not to follow the road map but rather to rely solely upon the materials provided in discovery. This is not an acceptable alternative for claimants. In fact, the major case upon which claimants rely, Pierce County (supra at 146), clearly states as follows:
“Our conclusion is reinforced by the history on the 1995 amendment. As we have already noted, the phrase ‘or collected’ was added to § 409 to address confusion among the lower courts about the proper scope of § 409 and to overcome judicial reluctance to protect under § 409 raw data collected for § 152 purposes. By amending the statute, Congress wished to make clear that § 152 was not intended to he an effort-free tool in litigation against state and local governments” (citations omitted; emphasis added).
Claimants have relied upon Pierce County (supra) to support their contention that the evidence voluntarily disclosed by the State should now be admissible in this court. However, claimants misapprehend the clear meaning of Pierce County (supra) in that the Supreme Court held that data collected or compiled for section 152 purposes was inadmissable, even though the same raw data could be obtained from other agencies (i.e., the Department of Motor Vehicles, individual county and local sheriffs) and would then be fully admissible at trial. In the case at bar, the waiver of the discovery privilege by the State could certainly have provided claimants and their expert with the ability to obtain nonprivileged raw data from agencies other than DOT, to analyze and compile such data and to draw conclusions based upon the expert’s independent analysis of the very same data which is hereby precluded.[2] In fact, had claimants or their expert done so, the defendant itself would in all probability be *828 precluded from introducing section 409 material to dispute claimants opinions and conclusions (see Coniker v State of New York, supra).
In so interpreting section 409, I follow the option chosen by the United States Supreme Court in Pierce County (supra at 144), where the Court stated:
“The United States, as intervenor, proposes a third interpretation: § 409 protects all reports, surveys, schedules, lists, or data actually compiled or collected for § 152 purposes, but does not protect information that was originally compiled or collected for purposes unrelated to § 152 and that is currently held by the agencies that compiled or collected it, even if the information was at some point ‘collected’ by another agency for § 152 purposes . . . Under this interpretation, an accident report collected only for law enforcement purposes and held by the county sheriff would not be protected under § 409 in the hands of the county sheriff, even though that same report would be protected in the hands of the Public Works Department, so long as the department first obtained the report for § 152 purposes. We agree with the Government’s interpretation of the statute.”
As a result of the above, given Mr. Bellizzi’s reliance solely upon material collected and compiled for section 152 purposes, the court must disregard Mr. Bellizzi’s testimony and all of the opinions rendered by Mr. Bellizzi as to notice, dangerous condition, time lag and standard of care. They are hereby stricken from the record.
*829 Given the preclusion of the evidence set forth above, claimants’ case is obviously substantially weakened. However, there are issues quite apart from the section 409 evidence which claimants assert could still result in a finding of liability against the defendant. Claimants contend that the element of proximate causation is still established, even absent the precluded evidence. Certainly, the court is cognizant of the fact that a substandard intersection was left unremediated for a period of at least nine years after it came to the attention of DOT (see exhibits 2, 5). During the course of two days of testimony, the court was taken on a tortuous tour of agency bureaucracy and repeatedly convinced of the fact that “when everyone is responsible, no one is accountable.” While certainly not unique, various DOT managers testified consistently and convincingly that while having responsibility without authority may lead to ulcers, it does not lead to implementation of construction projects. Given all of this nonprivileged, somewhat Kafkaesque testimony, the court must certainly consider whether claimants can support a finding of liability, even absent the precluded evidence in this mater.
Raymond Vega and Marisol Maldonado-Vega testified consistently to essentially the same facts. They testified that Mr. Vega was traveling west on Route 302 approaching the intersection of Route 17M. They testified that Mr. Vega stopped, at least twice, prior to the intersection, with the final time being at the stop line before entering the Route 302/Route 17M intersection. They further testified that Mr. Vega began to enter the intersection slowly and cautiously and was subsequently hit by a brown Ford Bronco (hereinafter Bronco), which they were unable to see until one or two seconds prior to impact. It is the Vegas’ testimony that the Bronco was northbound on Route 17M and that they were unable to see it as a result of site line obstructions or road grade. On this point, claimants admitted into evidence certain photographs of the Route 302/Route 17M intersection (exhibits 56-58, 60-67).
On cross-examination, Mr. Bellizzi testified that the various photographs admitted into evidence (exhibit M, DOT photolog of the intersection) establish the site line available to claimants as approximately 792± linear feet.[3] Mr. Bellizzi also testified that the time necessary for claimants’ vehicle to traverse and clear the northbound lane of Route 17M from a full stop would *830 be approximately five seconds. Further, he testified that a site distance of 792± linear feet would have given claimants 12 seconds to view an approaching vehicle, assuming that vehicle was traveling at the posted speed limit of 45 miles per hour. Even if the court were to speculate as to the Bronco’s speed, the mathematical fact remains that in order to traverse a 792± linear foot site distance in less then five seconds, the Bronco would have to have been traveling in excess of 80 miles per hour. Finally, claimants’ exhibit 71 indicates that their vehicle was hit in the left front. Impact in this area would indicate that the collision occurred almost immediately upon claimants entering the intersection. While this fact reduces the intersection clearance time to one or two seconds as described by claimants, it would have required the Bronco to travel at supersonic speed to traverse 792± feet in the allotted time. There was no evidence, and no testimony, that the Bronco was traveling at such excessive speed. Clearly, either the Bronco was not where claimants think it was or claimants just didn’t see it. In any event, it is a mathematical impossibility that the accident occurred in the manner described by claimants. Therefore, while I do not find Raymond Vega or Marisol Maldonado-Vega to have been evasive or intentionally misleading, I conclude that they are mistaken.
Since I cannot credit claimants’ version of the accident, it is impossible to determine how it occurred and, therefore, absolutely impossible for the court to affirmatively find that the proximate cause of this accident was the configuration of the Route 302/Route 17M intersection. This failure to prove proximate cause is fatal to a negligence action and, in this instance, fatal to claimants’ case.
It is well established that the State is not an insurer of the safety of its roads and no liability will attach unless the ascribed negligence of the State is a proximate cause of the accident (see Travalino v State of New York, 203 AD2d 276 [1994]; Andrews v State of New York, 168 AD2d 474 [1990]).
For all of the reasons set forth above, claimants have failed to introduce sufficient credible evidence, admissible in this court, to establish the negligence of DOT and further failed to establish that the alleged negligence was the proximate cause of their accident and injuries. Therefore, this claim is dismissed.

. It is also noted that other Court of Claims Judges have followed Judge O’Rourke’s reasoning in Coniker (see Siler v State of New York, Ct Cl, Lack, J., Claim No. 106121, Motion No. M-67984).

. Subsequent to this trial, the New York State Court of Appeals added an interesting twist in Matter of Newsday, Inc. v State Dept. of Transp. (5 NY3d 84 [2005]). In Newsday (supra), the Court of Appeals ruled that a list of *828 “dangerous intersections” is a public record subject to the New York State’s Freedom of Information Law (hereinafter FOIL). As a result, material which is clearly protected from discovery under section 409 must be disclosed by DOT in response to a request under FOIL, at least to news organizations. Nonetheless, the dicta in Newsday (supra at 88-89), confirm this court’s analysis of the instant matter where the Court of Appeals states: “If the documents . . . are disclosed . . . the protection offered by section 409 may be diminished, but it will not be eliminated ... If the information is published, some tort plaintiffs may obtain the equivalent of discovery, but section 409 will continue to exclude the documents from evidence . . . .”
It is also somewhat interesting that the Court of Appeals in Newsday (supra) leaves available a potential distinction between a news organization filing the FOIL request and a potential tort plaintiff filing the same FOIL request. Whether such distinction exists in New York State, and what the qualifying criteria might be, has been left for another day.

. Mr. Bellizzi based this estimate upon nonprecluded material.