PIERCE COUNTY, WASHINGTON *v.* GUILLEN, LEGAL
GUARDIAN OF GUILLEN ET AL., MINORS, ET AL.

No. 01–1229.   Argued November 4, 2002—Decided January 14, 2003

130

THOMAS, J., delivered the opinion for a unanimous Court.

*Daniel R. Hamilton* argued the cause for petitioner. With him on the briefs was *Susan P. Jensen.*

*Deputy Solicitor General Clement* argued the cause for the United States as intervenor. On the briefs were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Kneedler, Malcolm L. Stewart, Paul R. Q. Wolfson, Mark B. Stern, Alisa B. Klein, Kirk K. Van Tine, Paul M. Geier, Dale C. Andrews, Laura C. Fentonmiller,* and *Edward V. A. Kussy.*

*Salvador A. Mungia* argued the cause for respondents. With him on the brief were *Darrell L. Cochran* and *J. Bradley Buckhalter.**

JUSTICE THOMAS delivered the opinion of the Court.

We address in this case whether 23 U. S. C. § 409, which protects information "compiled or collected" in connection

---

*Briefs of *amici curiae* urging reversal were filed for the State of Louisiana by *Richard P. Ieyoub,* Attorney General, *John C. Young* and *James R. Dawson,* Assistant Attorneys General, and *Lawrence A. Durant;* for the State of Washington et al. by *Christine O. Gregoire,* Attorney General of Washington, and *William Berggren Collins* and *Michael E. Tardif,* Senior Assistant Attorneys General, and by the Attorneys General for their respective jurisdictions as follows: *Bruce M. Botelho* of Alaska, *Robert A. Butterworth* of Florida, *Earl I. Anzai* of Hawaii, *James E. Ryan* of Illinois, *Steve Carter* of Indiana, *J. Joseph Curran, Jr.,* of Maryland, *Frankie Sue Del Papa* of Nevada, *Robert Tenorio Torres* of the Northern Mariana Islands, *Betty D. Montgomery* of Ohio, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Mark L. Shurtleff* of Utah, and *William H. Sorrell* of Vermont; for the Association of American Railroads by *Carter G. Phillips, Stephen B. Kinnaird,* and *Daniel Saphire;* and for the Product Liability Advisory Council, Inc., by *Kenneth S. Geller* and *John J. Sullivan.*

A brief of *amicus curiae* urging affirmance was filed for the Association of Trial Lawyers of America by *Jeffrey Robert White.*

Briefs of *amici curiae* were filed for the Washington State Trial Lawyers Association Foundation by *Debra L. Stephens* and *Bryan P. Harnetiaux;* for Lynn A. Baker et al. by *Ms. Baker, pro se;* and for Robert Whitmer et al. by *Charles K. Wiggins, Kenneth W. Masters,* and *Keith L. Kessler.*

with certain federal highway safety programs from being discovered or admitted in certain federal or state trials, is a valid exercise of Congress' authority under the Constitution.

## I

### A

Beginning with the Highway Safety Act of 1966, Congress has endeavored to improve the safety of our Nation's highways by encouraging closer federal and state cooperation with respect to road improvement projects. To that end, Congress has adopted several programs to assist the States in identifying highways in need of improvements and in funding those improvements. See, e. g., 23 U. S. C. §§ 130 (Railway-Highway Crossings), 144 (Highway Bridge Replacement and Rehabilitation Program), and 152 (Hazard Elimination Program). Of relevance to this case is the Hazard Elimination Program (Program) which provides state and local governments with funding to improve the most dangerous sections of their roads. To be eligible for funds under the Program, a state or local government must undertake a thorough evaluation of its public roads. Specifically, § 152(a)(1) requires them to

> "conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections, and elements, including roadside obstacles and unmarked or poorly marked roads, which may constitute a danger to motorists, bicyclists, and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement."

Not long after the adoption of the Program, the Secretary of Transportation reported to Congress that the States objected to the absence of any confidentiality with respect to their compliance measures under § 152. H. R. Doc. No. 94–366, p. 36 (1976). According to the Secretary's re-

port, the States feared that diligent efforts to identify roads eligible for aid under the Program would increase the risk of liability for accidents that took place at hazardous locations before improvements could be made. *Ibid.* In 1983, concerned that the States' reluctance to be forthcoming and thorough in their data collection efforts undermined the Program's effectiveness, the United States Department of Transportation (DOT) recommended the adoption of legislation prohibiting the disclosure of information compiled in connection with the Program. See Brief for United States as *Amicus Curiae* in *Alabama Highway Dept.* v. *Boone,* O. T. 1991, No. 90–1412, p. 10, cert. denied, 502 U. S. 937 (1991).

To address the concerns expressed by the States and the DOT, in 1987, Congress adopted 23 U. S. C. § 409, which provided:

> "Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." Surface Transportation and Uniform Relocation Assistance Act of 1987, § 132, 101 Stat. 170.

The proper scope of § 409 became the subject of some dispute among the lower courts. Some state courts, for example, concluded that § 409 addressed only the admissibility of relevant documents at trial and did not apply to pretrial dis-

covery. According to these courts, although information compiled for § 152 purposes would be inadmissible at trial, it nevertheless remained subject to discovery. See, *e. g., Ex parte Alabama Highway Dept.*, 572 So. 2d 389 (Ala. 1990), cert. denied *sub nom. Alabama Highway Dept. v. Boone*, 502 U. S. 937 (1991); *Light v. New York*, 149 Misc. 2d 75, 80, 560 N. Y. S. 2d 962, 965 (Ct. Cl. 1990); *Indiana Dept. of Transp. v. Overton*, 555 N. E. 2d 510, 512 (Ind. App. 1990). Other state courts reasoned that § 409 protected only materials actually generated by a governmental agency for § 152 purposes, and documents collected by that agency to prepare its § 152 funding application remained both admissible and discoverable. See, *e. g., Wiedeman v. Dixie Elec. Membership Corp.*, 627 So. 2d 170, 173 (La. 1993), cert. denied, 511 U. S. 1127 (1994). See also, *e. g., Southern Pacific Transp. Co. v. Yarnell*, 181 Ariz. 316, 319–320, 890 P. 2d 611, 614–615, cert. denied, 516 U. S. 937 (1995) (applying the same rule in the context of the Railway-Highway Crossings program); *Tardy v. Norfolk Southern Corp.*, 103 Ohio App. 3d 372, 378–379, 659 N. E. 2d 817, 820–821 (same), appeal not allowed, 74 Ohio St. 3d 1408, 655 N. E. 2d 187 (1995) (Table).

Responding to these developments, Congress amended § 409 in two ways. In 1991, Congress expressly made the statute applicable to pretrial discovery, see Intermodal Surface Transportation Efficiency Act of 1991, § 1035(a), 105 Stat. 1978, and in 1995, Congress added the phrase "or collected" after the word "compiled," National Highway System Designation Act of 1995, § 323, 109 Stat. 591. As amended, § 409 now reads:

> "Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety con-

struction improvement project which may be imple-
mented utilizing Federal-aid highway funds shall not be
subject to discovery or admitted into evidence in a Fed-
eral or State court proceeding or considered for other
purposes in any action for damages arising from any oc-
currence at a location mentioned or addressed in such
reports, surveys, schedules, lists, or data."

## B

Ignacio Guillen's wife, Clementina Guillen-Alejandre, died
on July 5, 1996, in an automobile accident at the intersection
of 168th Street East and B Street East (168/B intersection),
in Pierce County, Washington. Several months before the
accident, petitioner had requested § 152 funding for this in-
tersection, but the request had been denied. Petitioner re-
newed its application for funding on April 3, 1996, and the
second request was approved on July 26, 1996, only three
weeks after the accident occurred.

Beginning on August 16, 1996, counsel for respondents
sought to obtain from petitioner information about accidents
that had occurred at the 168/B intersection.[1] Petitioner de-
clined to provide any responsive information, asserting that
any relevant documents were protected by § 409. After in-
formal efforts failed to resolve this discovery dispute, re-
spondents turned to the Washington courts.

Respondents first filed an action alleging that petitioner's
refusal to disclose the relevant documents violated the

---

[1] In a letter dated October 28, 1996, respondents' counsel clarified his
request as follows: "'I want to make the record clear that we are not
seeking any reports that were specifically written for developing any
safety construction improvement project at the intersection at issue.'"
Quoted in 144 Wash. 2d 696, 703, 31 P. 3d 628, 633 (2001). The letter
further explained, however, that respondents were seeking "'a copy of all
documents that record the accident history of the intersection that may
have been used in the preparation of any such reports.'" Quoted in *id.*,
at 703–704, 31 P. 3d, at 633.

State's Public Disclosure Act (PDA).[2] The trial court granted summary judgment in favor of respondents and ordered petitioner to disclose five documents[3] and pay respondents' attorney's fees. Petitioner appealed.

While the appeal in the PDA action was pending, respondents filed a separate action, asserting that petitioner had been negligent in failing to install proper traffic controls at the 168/B intersection. In connection with the tort action, respondents served petitioner with interrogatories seeking information regarding accidents that had occurred at the 168/B intersection. Petitioner refused to comply with the discovery request, once again relying on § 409. Respondents successfully sought an order to compel, and petitioner moved for discretionary appellate review of the trial judge's interlocutory order. The Washington Court of Appeals

[2] The relevant portion of the PDA provides:

"Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." Wash. Rev. Code § 42.17.340(1) (2000).

[3] The trial court's judgment encompassed the following materials: (1) a list of accidents at the 168/B intersection from 1990 through 1996, prepared by the Washington State Patrol, showing the location, date, time, and nature of the accident, which petitioner subsequently obtained for the purpose of conducting a study of the safety of the intersection; (2) a collision diagram dated January 5, 1989, prepared by a county employee responsible for investigating accidents at the intersection; (3) another collision diagram dated July 18, 1988, prepared by the same county employee; (4) reports of accidents at the intersection prepared by law enforcement agencies investigating the accidents; and (5) a draft memorandum from petitioner's public works director to a county council member, consisting of information used for petitioner's application for § 152 funds for the 168/B intersection. See 144 Wash. 2d, at 704–705, and n. 1; 31 P. 3d, at 634, and n. 1.

granted the motion and consolidated the appeal in the tort case with the appeal in the PDA action.

On review, the Washington Court of Appeals in large part affirmed the decisions below. In interpreting § 409, the court distinguished between an agency that collects or compiles information for purposes *unrelated* to § 152 and one that collects and compiles information pursuant to § 152. In the court's view, documents held by the first agency would not be protected by § 409, even if they subsequently were used for § 152 purposes, whereas documents held by the second agency would be protected, so long as their collection or compilation was the result of § 152 efforts. Applying these principles, the court concluded that only one of the documents at issue in the PDA case—the draft memorandum by the county's public works director, see n. 3, *supra*—was protected by § 409 because it had been prepared for § 152 purposes. The rest were not protected because respondents "carefully requested reports in the hands of the sheriff or other law enforcement agencies, *not* reports or data 'collected or compiled' by the Public Works Department." 96 Wash. App. 862, 873, 982 P. 2d 123, 129 (1999). The appellate court also expressed doubt about the constitutionality of § 409 as applied in state courts, but decided not to resolve the question because it was not raised. *Id.*, at 875, n. 26, 982 P. 2d, at 130, n. 26. Petitioner appealed once again.

The Washington Supreme Court's decision followed a three-step analysis. The court first determined that disclosure of the information respondents sought under both the PDA and state discovery rules would be appropriate only if the materials requested by respondents were not protected by § 409.

Second, examining the scope of § 409, the Washington Supreme Court rejected, as "unsound in principle and unworkable in practice," 144 Wash. 2d 696, 727, 31 P. 3d 628, 646 (2001), the appellate court's view that § 409 drew a distinction between documents "as held by" the Public Works De-

partment and documents "as held by" the county sheriff. Rather, it reasoned that § 409, as amended in 1995, purported to protect from disclosure any documents prepared for state and local purposes, so long as those documents were also collected for § 152 purposes. In the court's view, the statute did not turn on the identity of the custodian of the document at issue.

Having so construed § 409, the court proceeded to consider whether the adoption of the 1995 amendment to § 409 was a proper exercise of Congress' powers under the Spending, Commerce, and Necessary and Proper Clauses of Article I of the United States Constitution. With respect to the Spending Clause, the court found that "barring the admissibility and discovery in state court of accident reports and other traffic and accident materials and 'raw data' that were originally prepared for routine state and local purposes, simply because they are 'collected' for, *among other reasons,* federal purposes pursuant to a federal statute" did not reasonably serve any "valid federal interest in the operation of the federal safety enhancement program." *Id.,* at 737, 31 P. 3d, at 651. With respect to the Commerce Clause, the court concluded that § 409 was not an "integral part" of the regulation of the federal-aid highway system and, thus, could not be upheld under *Hodel* v. *Indiana,* 452 U. S. 314 (1981). 144 Wash. 2d, at 742, 31 P. 3d, at 654. Finally, with respect to the Necessary and Proper Clause, the court ruled that, although Congress could require state courts to enforce a federal privilege protecting materials "that would not have been created but-for federal mandates such as . . . [§ ]152," it was "neither 'necessary' nor 'proper' for Congress in 1995 to extend that privilege to traffic and accident materials and raw data created and collected for state and local purposes, simply because they are *also* collected and used for federal purposes." *Id.,* at 743, 31 P. 3d, at 654–655.

In light of its conclusion that the 1995 amendment to § 409 exceeded Congress' power under the Constitution, and,

therefore, was not binding on the States, the court held that § 409 protected only information originally created for § 152 purposes. But, rather than determining whether the documents or data at issue in this case would be protected under its reading of § 409, the court vacated the lower court's judgment and remanded the case for the lower courts to consider the record in the first instance.[4]

Three justices concurred only in the result. They disagreed with the majority's broad reading of the statute and would have held that § 409 precludes a potential plaintiff only from obtaining information from an agency that collected that information for § 152 purposes.

We granted certiorari to resolve the question of the constitutionality of this federal statute, 535 U. S. 1033 (2002), and now reverse.

## II

Before addressing the merits of petitioner's claims, we must first consider whether we have jurisdiction to hear the case. Under 28 U. S. C. § 1257(a), this Court has certiorari jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had . . . where the validity of a . . . statute of the United States is drawn in question . . . on the ground of its being repugnant to the Constitution . . . of the United States." As a general matter, to be reviewed by this Court, a state-court judgment must be final "'as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein.'" *Jefferson* v. *City of Tarrant*, 522 U. S. 75, 81 (1997) (quoting *Market Street R. Co.* v. *Railroad Comm'n of Cal.*, 324 U. S. 548, 551 (1945)). We have acknowledged, however, that certain state-court judgments can be treated as final for jurisdictional purposes, even though further

---

[4] The court also ruled that respondents were entitled to attorney's fees in their PDA action. See 144 Wash. 2d, at 745, 31 P. 3d, at 655–656.

proceedings are to take place in the state courts. *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 477–483 (1975) (outlining four exceptions to the finality rule). See also, *e. g.*, *ASARCO Inc.* v. *Kadish*, 490 U. S. 605, 611–612 (1989) (applying the *Cox* exceptions); *Duquesne Light Co.* v. *Barasch*, 488 U. S. 299, 306–307 (1989) (same).

Respondents contend the decision below did not result in a final judgment for purposes of § 1257(a) because the Washington Supreme Court remanded the case for further proceedings. They are only partially correct.

As we have already described, we have now before us a consolidated case consisting of two separate actions: an action under the State of Washington's Public Disclosure Act and a tort action. Respondents are correct that the decision below does not constitute a final judgment with respect to the tort action. In that case, the Washington Supreme Court resolved only a discovery dispute; it did not determine the final outcome of the litigation. Nor do any of the exceptions outlined in *Cox Broadcasting Corp.* v. *Cohn, supra,* apply to the tort action.[5] Accordingly, we dismiss the writ

---

[5] With respect to the first *Cox* exception, the Washington Supreme Court's interpretation of § 409 is not conclusive and does not foreordain the outcome of the proceedings below, as petitioner might well be able to prove that its actions regarding the 168/B intersection were not negligent. *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 479 (1975). Moreover, petitioner's victory on the merits would moot the discovery issue; accordingly, the second *Cox* exception is not implicated. *Id.*, at 480. And, if petitioner does not prevail on the merits, it remains free to raise the discovery issue on appeal. Even if the Washington Supreme Court adheres to its interlocutory ruling as "law of the case," we would still be able to review the discovery issue once a final judgment has been entered. *Jefferson* v. *City of Tarrant*, 522 U. S. 75, 82–83 (1997). In short, the third *Cox* exception does not help petitioner either. 420 U. S., at 481. Finally, this is not a case where "reversal of the state court on the federal issue would be preclusive of any further litigation," *id.*, at 482–483, because respondents remain free to try their tort case without the disputed documents. Rather, the decision below controls "merely . . . the nature and

of certiorari with respect to the tort action for want of jurisdiction.

We reach a different conclusion regarding the PDA action. In that suit, the Washington Supreme Court was asked to review only the appellate court's ruling that four of the five documents requested by respondents were not protected under § 409 and therefore should be disclosed under the PDA.[6] Because the Washington Supreme Court held the 1995 amendment to § 409 to be invalid—thus, limiting the privilege offered by the statute only to documents originally created for § 152 purposes—the court effectively interpreted § 409 more narrowly than the Court of Appeals. Accordingly, the four documents at issue before the Washington Supreme Court remained unprotected under § 409 and continued to be subject to disclosure under the PDA. As we read the decision below, all that remains to be decided on remand in the PDA action is the amount of attorney's fees to which respondents are entitled. The PDA action, then, falls squarely under the first *Cox* exception because the Washington Supreme Court's ruling on the federal privilege issue is "conclusive" and "the outcome of further proceedings preordained."[7]   *Cox Broadcasting Corp., supra,* at 479.

character of, or . . . the admissibility of evidence in, the state proceedings still to come." *Id.,* at 483. Thus, petitioner finds no refuge in the fourth *Cox* exception.

[6] Respondents did not seek review of the Court of Appeals' decision that one of the requested documents—a draft memorandum from the public works director to a county council member, see n. 3, *supra*—was in fact protected by § 409 because it contained information derived from § 152 activities. See 96 Wash. App. 862, 874, 982 P. 2d 123, 130 (1999). See also Reply to Brief in Opposition 2.

[7] Our reading of the decision below is reinforced by the Washington Supreme Court's ruling that respondents are entitled to attorney's fees for the PDA action. See n. 4, *supra.* Under state law, attorney's fees may not be awarded in a PDA action unless the prevailing party has "an affirmative judgment rendered in its favor at the conclusion of the entire case." *Overlake Fund* v. *Bellevue,* 70 Wash. App. 789, 795, 855 P. 2d 706, 710 (1993); see also *Tacoma News, Inc.* v. *Tacoma-Pierce County Health*

Therefore, we have jurisdiction to hear the PDA portion of this case.

## III

We turn now to the merits. Petitioner essentially agrees with the Washington Supreme Court's expansive reading of § 409, but argues that the Washington Supreme Court erred in concluding that Congress was without power to enact the 1995 amendment to § 409. Before addressing the constitutional question, however, we must determine the statute's proper scope.

### A

#### 1

According to petitioner, a document initially prepared and then held by an agency (here the county sheriff) for purposes unrelated to § 152 becomes protected under § 409 when a copy of that document is collected by another agency (here the Public Works Department) for purposes of § 152. Under petitioner's view, for example, an accident report prepared and held by the county sheriff for purposes unrelated to § 152 would become protected under § 409 as soon as a copy of that report is sent to the Public Works Department to be used in connection with petitioner's § 152 funding application. Consequently, a person seeking a copy of the accident report either from the county sheriff or from the Public Works Department would not be able to obtain it.[8] Brief for Petitioner 37–44.

---

*Dept.*, 55 Wash. App. 515, 525, 778 P. 2d 1066, 1071 (1989), review denied, 113 Wash. 2d 1037, 785 P. 2d 825 (1990) (Table). Thus, because the Washington Supreme Court held that respondents were entitled to attorney's fees in the PDA action, it must have considered the merits of that action to have been conclusively determined.

[8] Indeed, petitioner's brief could be read as suggesting that § 409 protects not only materials containing information collected for § 152 purposes but also any testimony regarding information contained in such materials. Brief for Petitioner 44. See also Brief for Respondents 20 (offering this reading as a possible interpretation of the statute). Under this view, an

Respondents contend that § 409 protects only materials actually created by the agency responsible for seeking federal funding for § 152 purposes. Brief for Respondents 22–23, and n. 2. On their view, if the Public Works Department collects reports of all the accidents that have occurred at a given intersection to prepare its § 152 application, those reports would not be protected by § 409, and a person seeking them from the Public Works Department would be entitled to obtain them.

The United States, as intervenor, proposes a third interpretation: § 409 protects all reports, surveys, schedules, lists, or data actually compiled *or* collected for § 152 purposes, but does not protect information that was originally compiled or collected for purposes unrelated to § 152 and that is currently held by the agencies that compiled or collected it, even if the information was at some point "collected" by another agency for § 152 purposes. Brief for United States 28–36. Respondents concede that this is a defensible reading of the statute. Brief for Respondents 23–24, 25. Under this interpretation, an accident report collected only for law enforcement purposes and held by the county sheriff would not be protected under § 409 in the hands of the county sheriff, even though that same report would be protected in the hands of the Public Works Department, so long as the department first obtained the report for § 152 purposes. We agree with the Government's interpretation of the statute.

2

We have often recognized that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth. *Baldrige* v. *Sha-*

---

officer who witnessed an accident would not be permitted to testify about that accident, if the officer summarized what he saw in a report that was later "collected" for § 152 purposes. But see Brief for Petitioner 45–46 (asserting that testimony derived from sources apart from the protected documents is permitted under § 409).

*piro*, 455 U. S. 345, 360 (1982) ("A statute granting a privilege is to be strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence'" (quoting *St. Regis Paper Co.* v. *United States*, 368 U. S. 208, 218 (1961)). See also, *e. g.*, *University of Pennsylvania* v. *EEOC*, 493 U. S. 182, 189 (1990). See generally *United States* v. *Nixon*, 418 U. S. 683 (1974). Here, § 409 establishes a privilege; accordingly, to the extent the text of the statute permits, we must construe it narrowly.

Of the three interpretations outlined above, respondents' clearly gives the statute the narrowest application. Nevertheless, we decline to adopt it, as that reading would render the 1995 amendment to § 409 (changing the language from "compiled" to "compiled *or collected*") an exercise in futility. We have said before that, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone* v. *INS*, 514 U. S. 386, 397 (1995). Yet, under respondents' view, § 409 as amended in 1995 would protect from disclosure only information that was already protected before the amendment, *i. e.*, information *generated* for § 152 purposes. That reading gives the amendment no "real and substantial effect" and, accordingly, cannot be the proper understanding of the statute.

Petitioner's reading, by contrast, while permissible, gives the statute too broad of a reach given the language of the statute, thus conflicting with our rule that, when possible, privileges should be construed narrowly. See, *e. g.*, *Baldrige, supra*, at 360.

The interpretation proposed by the Government, however, suffers neither of these faults. It gives effect to the 1995 amendment by making clear that § 409 protects not just the information an agency generates, *i. e.*, compiles, for § 152 purposes, but also any information that an agency collects from other sources for § 152 purposes. And, it also takes a narrower view of the privilege by making it inapplicable to information compiled or collected for purposes unrelated to

§ 152 and held by agencies that are not pursuing § 152 objectives. We therefore adopt this interpretation.

Our conclusion is reinforced by the history of the 1995 amendment. As we have already noted, the phrase "or collected" was added to § 409 to address confusion among the lower courts about the proper scope of § 409 and to overcome judicial reluctance to protect under § 409 raw data collected for § 152 purposes. See *supra*, at 134–136. By amending the statute, Congress wished to make clear that § 152 was not intended to be an effort-free tool in litigation against state and local governments. Compare, *e. g.*, *Robertson* v. *Union Pacific R. Co.*, 954 F. 2d 1433, 1435 (CA8 1992) (recognizing that § 409 was intended to "prohibit federally required record-keeping from being used as a 'tool . . . in private litigation'" (quoting *Light* v. *New York*, 149 Misc. 2d 75, 80, 560 N. Y. S. 2d 962, 965 (Ct. Cl. 1990)), with authorities cited *supra*, at 134–135. However, the text of § 409 evinces no intent to make plaintiffs worse off than they would have been had § 152 funding never existed. Put differently, there is no reason to interpret § 409 as prohibiting the disclosure of information compiled or collected for purposes unrelated to § 152, held by government agencies not involved in administering § 152, if, before § 152 was adopted, plaintiffs would have been free to obtain such information from those very agencies.

## B

Having determined that § 409 protects only information compiled or collected for § 152 purposes, and does not protect information compiled or collected for purposes unrelated to § 152, as held by the agencies that compiled or collected that information, we now consider whether § 409 is a proper exercise of Congress' authority under the Constitution. We conclude that it is.

It is well established that the Commerce Clause gives Congress authority to "regulate the use of the channels of interstate commerce." *United States* v. *Lopez*, 514 U. S. 549, 558

(1995) (citing *United States* v. *Darby*, 312 U. S. 100, 114 (1941); *Heart of Atlanta Motel, Inc.* v. *United States*, 379 U. S. 241, 256 (1964)). In addition, under the Commerce Clause, Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez, supra,* at 558 (citing *Shreveport Rate Cases,* 234 U. S. 342 (1914); *Southern R. Co.* v. *United States,* 222 U. S. 20 (1911); *Perez* v. *United States,* 402 U. S. 146 (1971)).

As already discussed, *supra,* at 133, Congress adopted § 152 to assist state and local governments in reducing hazardous conditions in the Nation's channels of commerce. That effort was impeded, however, by the States' reluctance to comply fully with the requirements of § 152, as such compliance would make state and local governments easier targets for negligence actions by providing would-be plaintiffs a centralized location from which they could obtain much of the evidence necessary for such actions. In view of these circumstances, Congress could reasonably believe that adopting a measure eliminating an unforeseen side effect of the information-gathering requirement of § 152 would result in more diligent efforts to collect the relevant information, more candid discussions of hazardous locations, better informed decisionmaking, and, ultimately, greater safety on our Nation's roads. Consequently, both the original § 409 and the 1995 amendment can be viewed as legislation aimed at improving safety in the channels of commerce and increasing protection for the instrumentalities of interstate commerce. As such, they fall within Congress' Commerce Clause power.[9] Accordingly, the judgment of the Washing-

---

[9] Because we conclude that Congress had authority under the Commerce Clause to enact both the original § 409 and the 1995 amendment, we need not decide whether they could also be a proper exercise of Congress' authority under the Spending Clause or the Necessary and Proper Clause.

ton Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.[10]

*It is so ordered.*

---

[10] Respondents contend in passing that § 409 violates the principles of dual sovereignty embodied in the Tenth Amendment because it prohibits a State from exercising its sovereign powers to establish discovery and admissibility rules to be used in state court for a state cause of action. See Brief for Respondents 44–46. The court below did not address this precise argument, reasoning instead that the 1995 amendment to § 409 was beyond Congress' enumerated powers. We ordinarily do not decide in the first instance issues not resolved below and decline to do so here. See, *e. g., National Collegiate Athletic Assn.* v. *Smith,* 525 U. S. 459, 470 (1999). Moreover, in light of our disposition on this issue, we need not address the second question on which we granted certiorari: whether private plaintiffs have standing to assert "states' rights" under the Tenth Amendment where their States' legislative and executive branches expressly approve and accept the benefits and terms of the federal statute in question.