# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 21, 2010, Session

## STATE OF TENNESSEE v. CRAIG EDWIN JAMES

**Direct Appeal from the Circuit Court for Rutherford County**
**No. M-63877       Don R. Ash, Judge**

**No. M2010-01001-CCA-R3-CD - Filed January 26, 2011**

The Defendant, Craig Edwin James, was convicted of speeding in Rutherford County General Sessions Court and appealed his conviction to the Rutherford County Circuit Court. Following a de novo bench trial, the Defendant was convicted of speeding, a Class C misdemeanor, fined five dollars, and ordered to pay $624 in court costs. On appeal, the Defendant contends: (1) his General Sessions trial was conducted in violation of both Tennessee statute and the United States and Tennessee Constitutions; (2) the designation of his speeding violation as criminal rather than civil violated his right to equal protection; and (3) the United States Department of Transportation improperly limits state sentencing discretion in violation of the Supremacy Clause. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Perry A. Craft, Brentwood, Tennessee, for the Appellant, Craig Edwin James.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the Appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from the Defendant driving at a speed of ninety-two miles per hour in a seventy mile per hour speed zone. After observing this driving infraction, Tennessee

State Trooper Michael Morgan stopped the Defendant, citing him for speeding, and instructed him to report to the General Sessions Court of Rutherford County. The General Sessions Court found the Defendant guilty and ordered him to pay $215.85 in court costs and a fifty-dollar fine.

The Defendant appealed the General Sessions verdict to the Rutherford County Circuit Court. Prior to trial, the Defendant moved for the trial court to dismiss the speeding citation or, in the alternative, to suppress Trooper Morgan's testimony, but the circuit court denied both motions. The circuit court then conducted a de novo bench trial, during which Trooper Morgan testified that, after observing the Defendant traveling at a high rate of speed, he determined, through the use of a radar gun, that the Defendant was traveling at ninety-two miles per hour in a seventy miles per hour zone. The Defendant testified that he did not remember speeding on the day in question. The Circuit Court found the Defendant guilty of speeding and ordered him to pay $624 in court costs and a five-dollar fine. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends: (1) his General Sessions trial was not conducted in accordance with the Tennessee Code and that it violated several federal and state constitutional guarantees; (2) the designation of his speeding violation as a criminal offense rather than a civil offense violated his right to equal protection of the laws; and (3) the United States Department of Transportation improperly limits state sentencing discretion in violation of the supremacy clause.

### A. General Sessions Trial

The Defendant addresses most of his objections on appeal to his General Sessions trial. During that trial, in which a representative of the Rutherford County District Attorney General did not participate, Trooper Morgan described the behavior he observed that led him to cite the Defendant for speeding. The Defendant assigns the following points as error in his General Sessions trial: (1) that he was denied due process because Trooper Morgan alone, and not a representative of the State, appeared in order to prosecute his speeding citation; (2) that the State, a non-natural entity, was allowed to proceed without counsel; (3) that Trooper Morgan was allowed to represent the State whereas the Tennessee Code directs the District Attorney to represent the State; and (4) that he was not afforded a jury trial on the issue of whether the costs assessed against him were related to the actual costs of his proceedings.

The State responds that, because the Defendant received a de novo bench trial in the Circuit Court of Rutherford County, his General Sessions trial is treated "as though [it] never

happened." It argues that, as a consequence, the Defendant cannot bring to this Court claims arising from his General Sessions trial.

Tennessee Code Annotated section 27-5-108 provides that any party may appeal from an adverse decisions of a general sessions court to the circuit court of the county. This appeal must be filed within ten days, and the circuit court must review the issues raised in the appeal de novo. T.C.A. § 27-5-108(c) (2009). In conducting its de novo review of the issues raised, the circuit court must try the matter "as if no other hearing had occurred" and render judgment "as if no judgment had previously been rendered." *State v. Cunningham*, 972 S.W.2d 16, 18 (Tenn. Crim. App. 1998). "Appeals from general sessions judgments may only be made to the proper circuit court." *Graves v. Kraft General Foods*, 45 S.W.3d 584, 586 (Tenn. Crim. App. 2000). All other courts lack subject matter jurisdiction to dispose of issues arising from general sessions judgments. *Id*.

In this case, the Defendant first received a hearing in the general sessions court on the issue of whether he was guilty of speeding. At this hearing, only Trooper Morgan testified, and the State was not represented by counsel. The Defendant was convicted of speeding, and he filed a timely appeal of this conviction to the circuit court. In the circuit court, the Defendant received a new, de novo bench trial on the issue of his guilt. In this hearing, though Trooper Morgan again appeared and testified against the Defendant, the District Attorney General appeared on behalf of the State, and both sides presented evidence. After hearing the evidence, the circuit court found the Defendant guilty of speeding and ordered him to pay a five-dollar fine and court costs.

The Defendant already has availed himself of the available appellate remedies for his general sessions trial. The Tennessee Code gives circuit courts exclusive subject matter jurisdiction of issues arising from general sessions judgments. *See* T.C.A. § 27-5-108(a); *Graves*, 45 S.W.3d at 586. The Defendant timely filed an appeal with the proper circuit court and received a de novo hearing. The circuit court hearing being the only designated forum for review of general sessions hearings, the Defendant's objections as to his general sessions hearings are not properly before us. *See id*.

Moreover, the Defendant's circuit court hearing complied with the constitutional and statutory provisions the Defendant claims he was denied in his general sessions hearing: Trooper Morgan's sole role was that of witness, and the District Attorney General appeared on behalf of the State. In consideration of the foregoing, the Defendant's objections to his general sessions hearing are not a proper basis for relief in this appeal. He is not entitled to relief on this issue.

## B. Equal Protection & Due Process

The Defendant contends that the Tennessee Code violates the equal protection clauses of the United States and Tennessee State constitutions because it provides for traffic citations issued by Tennessee State law enforcement to be heard in general sessions court whereas citations issued by local officers must be heard in city court. The State responds that, because driving is a privilege rather than a constitutionally guaranteed right, the equal protection clause does not restrict State action with respect to driving privileges.

Whereas the Equal Protection clause allows for the disputed differentiation in the Tennessee Code, it does not leave the enforcement of a state's traffic code totally up to the state, as the State implies. The Equal Protection clause of the Fourteenth Amendment to the United States Constitution requires that "persons similarly situated be treated alike." *Lanier v. Rains*, 229 S.W.3d 656, 666 (Tenn. 2007). To this end, legislative classifications that "have a discriminatory effect and . . . [are] motivated by a discriminatory purpose," are subject to heightened scrutiny. *State v. Keen*, 31 S.W.3d 196, 217 (Tenn. 2000). The Class Legislation clause of article XI, section 8, of the Tennessee Constitution is analogous to the Equal Protection clause, and courts of this state apply Equal Protection analysis when interpreting the Class Legislation clause. *See, e.g., Riggs v. Burson*, 941 S.W.2d 44, 52 (Tenn. 1997). In *City of Chattanooga v. Davis*, our Supreme Court held that the Legislature may confer jurisdiction upon municipalities to "try and dispose of cases based upon violation of State [traffic] statutes" for the purposes of "economy, efficiency and expeditious handling of traffic cases" without running afoul of the Class Legislation, Equal Protection, and Due Process clauses. 54 S.W.3d 248, 276 (Tenn. 2001) (citing *Hill v. State ex rel Phillips*, 392 S.W.2d 950, 952 (Tenn. 1965)). Further, the Court held that the Class Legislation and Equal Protection clauses do not require municipalities to impose the same penalties imposed in state law for the identical traffic offense. *Id*.

The Defendant takes issue with his speeding violation being designated "criminal" rather than "civil," as it would be had a municipal officer issued his citation. In light of our Supreme Court's ruling that both state and local authorities may prosecute Tennessee traffic violations regardless of the resulting divergent penalties, the Defendant's contention is without merit. *See Davis*, 54 S.W.3d at 276. We conclude that the designation of the Defendant's offense as criminal did not violate the his rights to due process, equal protection, and against class legislation. He is not entitled to relief on this issue.

## C. Sovereignty Doctrine

The Defendant addresses his final contention to the federal regulation that awards federal funding to states that agree to limit the discretion its judges to sentence the holder of

a commercial driver's license. He argues that driving is purely a local concern and that, as such, the federal government's attempt to regulate it violates the Supremacy Clause of the United States Constitution.[1] The State argues that, because the interstate highway system includes highways that run across boundaries of many states, highway safety is a federal issue properly regulated by the federal government.

As the United States Supreme Court has expressed, "As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). Under this system, the Federal Government's power is limited to those powers enumerated in the United States Constitution, whereas the States "are free to exercise all powers that the Constitution does not withhold from them." *U.S. v. Comstock*, – U.S. –, 130 S.Ct. 1949, 1971 (2010) (Thomas, J., dissenting). Article I, section 8, of the United States Constitution sets out the "few and defined" powers of the Federal Government, among which appears the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes" or, as it is commonly known, the "Commerce Clause" power. U.S. Const., art. I, § 8, cl. 3.

The Commerce Clause gives Congress authority to "regulate the use of the channels of interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (1995). As the Tennessee Supreme Court has discussed, the Commerce Clause permits Congress to legislate "when it perceives that the national welfare is not furthered by the independent actions of the State." *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662, 669 (1981). In exercising this authority, Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558.

We find the United States Supreme Court's decision in *Pierce County, Washington v. Guillen,* particularly relevant to our analysis. In that case, the complainant argued that Congress exceeded its authority when it enacted a statute withholding federal funding from states that continued to allow evidentiary discovery of data collected by state public works agencies to identify potential accident sites or hazardous roadway conditions. 537 U.S. 129, 133-34 (2003). The Supreme court held, because the legislation could be viewed as "aimed at improving safety in the channels of commerce and increasing protection for the instrumentalities of interstate commerce," it was a proper exercise of Congress's authority under the Commerce Clause. *Id*. at 147.

---

[1]Though the Defendant objects to the regulation under the Supremacy Clause, we will analyze the regulation as it relates to the Commerce Clause, which, in our view, bears more directly on the regulation's constitutionality.

The disputed federal action in this case concerns a regulation issued by the United States Department of Transportation ("DOT"). The Federal Motor Carrier Safety Administration ("FMSCA"), an administration of the DOT, was created "to reduce the number and severity of the large-truck involved crashes through . . . effective commercial driver's license testing, recordkeeping and sanctions." 49 U.S.C.A. § 113 note. The FMSCA promulgated regulation 49 C.F.R. § 384.226, which threatens to withhold federal funding from states that "mask" violations of traffic control laws for holders of commercial driver's licenses:

> The State must not mask, defer imposition of judgment, or allow an individual to enter into a diversion program that would prevent a CDL driver's conviction for any violation, in any type of motor vehicle, of a State or local traffic control law (except a parking violation) from appearing on the CDLIS driver record, whether the driver was convicted for an offense committed in the State where the driver is licensed or another State.

49 C.F.R. § 384.226 (2009). A state that does not comply with this regulation, or any other regulation issued under the "State Compliance with Commercial Driver's License Program" part of the Federal Motor Carrier Safety Regulations, loses five percent of federal-aid highway funds the first year of its non-compliance, and ten percent each year thereafter. 49 C.F.R. § 384.401(a)-(b).

In our view, by discouraging state authorities from taking measures to lessen the impact a driving conviction has upon the status of a defendant's commercial driver's license the FMSCA sought to prevent dangerous drivers from maintaining commercial driver's licenses and thereby improve the safety of our nation's highways. Thus, we conclude that, insofar as the disputed regulation in this case increases the transparency of a CDL holder's driving record, the regulation can be viewed as "aimed at improving safety in the channels of commerce and increasing protection for the instrumentalities." *See Guillen*, 537 U.S. at 147. Therefore, it is a valid exercise of Congress's power under the Commerce Clause to "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce" and, as such, is not out of step with our nation's system of dual sovereignty. *See Lopez*, 514 U.S. at 558. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude the Defendant was properly convicted and sentenced for his driving violation. A such, we affirm the trial court's judgment.

6

_____

ROBERT W. WEDEMEYER, JUDGE