Dmitriy ZIMBOVSKIY, Appellant,

v.

UNION PACIFIC RAILROAD
COMPANY, Respondent,

Soo Line Railroad Company d/b/a Canadian Pacific Railway and a wholly owned subsidiary of Canadian Pacific Railway Limited, et al., Respondents.

No. A11–1329.

Court of Appeals of Minnesota.

March 26, 2012.

Sharon L. Van Dyck, Van Dyck Law Firm, PLLC, St. Louis Park, MN, for appellant.

David A. Donna, Julius W. Gernes, Donna Law Firm, P.C., Minneapolis, MN, for respondent.

Timothy R. Thornton, Jonathan P. Schmidt, Briggs and Morgan, P.A., Minneapolis, MN, for respondents Soo Line Railroad Company, et al.

Considered and decided by
CONNOLLY, Presiding Judge; ROSS, Judge; and RANDALL, Judge.*

## OPINION

CONNOLLY, Judge.

Appellant, the driver of a tractor-trailer that collided with a train, brought this action against the railroad that owned and maintained the tracks and the railroad that operated the train. Both railroads were granted summary judgment by the district court. Appellant challenges those judgments, arguing that the evidence presented to show that some of his claims were preempted by federal law was inadmissible and that the district court erred in finding as a matter of law that appellant had not alleged the evidence of causation requisite for a negligence claim. We affirm.

## FACTS

On November 29, 2003, appellant Dmitriy Zimbovskiy drove his tractor-trailer south on a road that crosses railway tracks owned and maintained by respondent Union Pacific Railroad Company (Union Pacific). Appellant claims that he approached the tracks slowly after stopping at a stop sign; the conductor of the train then heading towards the crossing from the east says appellant approached "pretty fast." That train was owned and operated by respondent Soo Line Railroad Company, d/b/a Canadian Pacific Railway (Soo Line).

Appellant stated further that at first he did not see the oncoming train because his view was blocked and that, when he did see the train, he became confused, stopped, tried to shift into reverse but actually shifted into second, and was moving forward when the train hit the middle of the trailer. Despite the application of its emergency brake, the train pushed the 80,000–pound tractor-trailer 1,067 feet past the crossing before coming to a stop. Appellant was injured as a result of the collision.[1]

## ISSUES

1. Was evidence that federal funds had been used to pay for the crossing signals where the collision occurred admissible to prove that federal law governing the signals preempted state law tort claims?

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Appellant eventually pleaded guilty to careless driving for his driving conduct on the day of the accident.

2. Does a vehicle approaching the tracks at a railway crossing impose on a train crew a duty to slow or stop the train because the vehicle is a specific, individual hazard?

## ANALYSIS

### 1. Claims against Union Pacific

■ "When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs. Inc.*, 716 N.W.2d 634, 638 (Minn. 2006).

In his complaint, appellant alleged that Union Pacific failed to install adequate warning devices at the crossing. The Supreme Court has addressed whether "the [Federal Railroad Safety Act] FRSA, by virtue of 23 C.F.R. § 646.214(b)(3) and (4) (1999) pre-empts state tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds have participated in the installation of the devices" and concluded that it does preempt. *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347, 351, 120 S.Ct. 1467, 1471, 1473, 146 L.Ed.2d 374 (2000). "[O]nce the [Federal Highway Administration] FHWA has funded the crossing improvement and the warning devices are actually installed and operating the regulation displaces state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." *Id.* at 354, 120 S.Ct. at 1474 (quotation omitted).

It is undisputed that federal funds paid about 90% of the cost of the devices at the crossing where appellant's collision oc-

curred. But the source for this information was the affidavits of two employees of the Minnesota Department of Transportation (MnDOT). One affidavit included an exhibit entitled "MnDOT Project Expenditures and Charges," which detailed the charges and the final voucher submitted to the FHWA; the other affidavit included as exhibits the federal letter authorizing construction, the agreement whereby federal funds would pay for 90% and railway funds for 10%, and the certificate of FHWA and MnDOT inspection of the project and its satisfactory completion.

■ Appellant argues that this evidence is inadmissible, relying on 23 U.S.C. § 409 (2006).

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings ... which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409. The statute was enacted because of the fear that ["a state department of transportation's] diligent efforts to identify roads eligible for aid under the [federal Hazard Elimination] Program would increase the risk of [the department's] liability for accidents that took place at hazardous locations before improvements could be made." *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 134, 123 S.Ct. 720, 724, 154 L.Ed.2d 610 (2003).[2]

---

2. Appellant argues that we may not consider the purpose for which 23 U.S.C. § 409 was

enacted absent a finding of ambiguity. This argument confuses the construction of a stat-

Thus, 23 U.S.C. § 409 enables state transportation departments to procure information on crossings eligible for federal funds to enhance their safety without fear that the information will be used against the department in a lawsuit resulting from the pre-enhancement dangerous condition of such crossings.

Nothing in the language of 23 U.S.C. § 409 indicates a congressional intent to interfere with the preemptive effect of FRSA on state tort claims established in *Shanklin*, 529 U.S. at 351, 120 S.Ct. at 1473. Moreover, it is "well known rule of statutory construction that the courts will not impute to the Congress an intent to produce in a statute an absurd or unreasonable result." *United States v. Kaldenberg*, 429 F.2d 161, 164 (9th Cir.1970); *see also Comm'r of Internal Revenue v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (noting that, in interpreting a statute, courts may adopt a restricted rather than a literal meaning of the words when acceptance of the literal meaning would lead to an absurd result). Holding that Congress drafted both a rule, 23 C.F.R. § 646.214(b)(3) and (4), that provides for FRSA preemption of state law claims when crossing improvements are paid for with federal funds, and a statute, 23 U.S.C. § 409, that excludes evidence of federal funds paying for crossing improvements would impute to Congress an intent to produce an absurd result.

Federal cases addressing 23 U.S.C. § 409 have done so in contexts other than preemption. *See, e.g., Pierce Cnty.*, 537 U.S. at 136, 123 S.Ct. at 725–26 (addressing county's refusal under 23 U.S.C. § 409 to provide information about prior acci-

dents at intersection to spouse of decedent killed in automobile accident at that intersection); *Hester v. CSX Transp.*, 61 F.3d 382, 387 (5th Cir.1995) (rejecting argument of parents of automobile passenger killed in collision with train that admission of railway's expert witness's testimony that his personal inventory of traffic volume at crossing was slightly less than state's inventory violated 23 U.S.C. § 409 and was reversible error); *Lusby v. Union Pac. R.R. Co.*, 4 F.3d 639, 641 (8th Cir.1993) (finding that, in action brought by father of decedent killed by train that collided with the wrecker he was driving, expert who was "key witness in establishing that the crossing was abnormally dangerous" had impermissibly relied on data received from the state highway and transportation department in violation of 23 U.S.C. § 409); *Harrison v. Burlington N. R.R. Co.*, 965 F.2d 155, 158–60 (7th Cir.1992) (rejecting argument of mother of car passenger killed in collision with train that exclusion of investigative report and recommendations regarding the crossing where the accident occurred deprived her of the right to introduce evidence proving her theory that the death was the result of railroad's breach of its duty to provide automatic signals at that crossing); *Robertson v. Union Pac. R.R. Co.*, 954 F.2d 1433, 1435 (8th Cir.1992) (finding no abuse of discretion in district court's use of 23 U.S.C. § 409 to exclude highway department's formula for identifying hazardousness of crossings and its automobile count at crossing where accident occurred and newspaper article that, based on this information, identified crossing as most hazardous in state, and no abuse of discretion in district court's instruction to injured plaintiff's expert wit-

---

ute, which does require a finding of ambiguity, *see Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010), with the application of the statute, which does not. *See, e.g., Pierce Cnty.*, 537 U.S. at 134, 123

S.Ct. at 724 (discussing whether 23 U.S.C. § 409 applied to a particular situation without indicating or even implying that the statute is ambiguous).

ness not to use highway department data in formulating his opinion); *see also Shanklin*, 529 U.S. at 358–59, 120 S.Ct. at 1477 (reflecting admissibility of department of transportation records by basing its conclusion that "the FRSA pre-empts respondent's state tort claim that the advance warning signs and reflectorized crossbucks installed at the ... crossing were inadequate" on two facts: (1) "the [Tennessee] TDOT used federal funds for the signs' installation[,]" (2) "the TDOT determined that warning devices other than automatic gates and flashing lights were appropriate").

In light of federal caselaw applying 23 U.S.C. § 409 to prevent litigants from using information compiled by state governments to determine the need for safety enhancement at railway crossings and not applying it to defeat FRSA preemption claims, we see no error in the district court's well-written opinion that concluded that the affidavits submitted by MnDOT employees to show that the crossing improvements had indeed been paid for with federal funds were admissible and that appellant's state-law claims against Union Pacific were preempted.[3] As the district court noted, to hold otherwise

> transforms this statute, which shields railroads and the State from claims based upon their investigation, into a sword, in that such interpretation forces railroads to give up any federal preemption defense in cases where there is federal funding of improvements. This interpretation, which undermines the

very purpose of the statute, is without merit.

**2.  Claims against Soo Line**[4]

■■■■  Appellant argues that his tractor-trailer was a specific, individual hazard that imposed on the Soo Line crew a duty to slow or stop the train. Such claims are not preempted. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675, 113 S.Ct. 1732, 1743 n. 15, 123 L.Ed.2d 387 (1993) ("[T]he preemption of [an] excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard.").

■■■■  The district court concluded that appellant "has simply failed to show that there is any issue of material fact relative to the issue [of] whether delay of a few seconds in the train crew's activation of the emergency brake was a proximate cause of the collision or [appellant]'s injuries." *See Louis v. Louis*, 636 N.W.2d 314, 318 (Minn.2001) (defendant in negligence action is entitled to summary judgment if a plaintiff fails to prove that a duty of care existed, that the duty was breached, that the plaintiff was injured, and that the breach of the duty caused the injury). "We review de novo whether a genuine issue of material fact exists." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002).

Appellant's tractor-trailer became a specific, individual hazard when it stopped on

---

**3.**  Because we affirm on this basis, appellant's argument that MnDOT could not and did not waive the evidentiary privilege conferred by 23 U.S.C. § 409 is moot, and we do not address it.

**4.**  Appellant does not challenge the dismissal of his claims based upon a local safety hazard, which the district court found were preempted because appellant cited no state

law enacted to eliminate or reduce a local safety hazard. *See* 49 U.S.C. § 20106(a)(2) (2006) (providing that "A state may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation or order ... is necessary to eliminate or reduce an essentially local safety or security hazard....").

the tracks: when the Soo Line crew members saw it on the tracks, they had a duty to attempt to stop the train, and they fulfilled this duty by applying the emergency brake. Appellant argues that the tractor-trailer was already a specific, individual hazard some seconds earlier, when the Soo Line crew first saw it "slowly approaching" the crossing. He argues that the crew's duty to slow the train began then, and that, if the emergency brake had been applied earlier, the tractor-trailer would have been farther across the tracks, which would have "changed the nature of the impact and the severity of [appellant's] injuries." But a vehicle "slowly approaching" a crossing is not a specific, individual hazard: as the district court noted, the Soo Line crew "anticipated that [the truck] would move across the railroad tracks" rather than stop on them. *See* Minn.Stat. § 169.26, subd. 1 (2010) (requiring drivers to stop ten feet from railroad tracks if an approaching train is visible and remain until able to cross ten feet beyond the tracks).

Appellant cites no caselaw indicating that a train crew has a duty to slow or stop a train for every vehicle seen approaching the tracks, and the engineer testified that he did not use the emergency brake until "I knew we were going to hit him no matter what he did." He explained further: "You don't always just put [a train] into emergency when you first see a car or truck on a crossing ahead of you because it could cause a derailment to your train ..."

There are no Minnesota cases directly on point. The district court supported its decision by citing *Veit v. Burlington N. Santa Fe Corp.*, 171 Wash.2d 88, 249 P.3d 607 (2011) and *Price v. Nat'l R.R. Passenger Corp.*, 14 P.3d 702 (Utah Ct.App.2000).

A car approaching a railroad crossing generally does not result in an imminent collision, so the BNSF engineer was not required to stop or slow when he saw [the plaintiff's] car approaching the tracks. Moments later, when it became clear that collision was indeed imminent, the engineer exercised due care by activating the emergency brake.

*Veit*, 249 P.3d at 619 (citation omitted). This is what happened here: when the collision was imminent, the duty to brake came into effect, and the Soo Line crew did not breach that duty.

[T]he train operator was justified in assuming the decedents' car would remain stopped at the crossing and that the duty to brake did not arise until the decedents' car drove onto the railroad tracks. A contrary ruling would impose a tort duty on train operators to brake a train any time the first in a line of cars at a crossing attempts to cross in front of the train.

*Price*, 14 P.3d at 708. We agree with the reasoning of these cases and conclude that appellant has not shown a genuine issue of material fact as to whether Soo Line had a duty to slow the train when his tractor-trailer was first seen approaching the crossing.

## DECISION

Because the evidence showing that the improvements to the crossing were paid for by federal funds was admissible, appellant's claims against Union Pacific were preempted; because appellant did not show a genuine issue of material fact as to whether Soo Line had a duty to slow the train before it did so, the specific, individual hazard claim against Soo Line was properly dismissed.

**Affirmed.**